David YASHON, M.D.,
Plaintiff-Appellant,

v.

William E. HUNT, M.D., et al.,
Defendants-Appellees.

No. 82–3201.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 15, 1982.

Decided Jan. 3, 1983.

Rudolph Janata, Columbus, Ohio, for plaintiff-appellant.

John Elam, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for defendants-appellees.

Before EDWARDS, Chief Judge, and CONTIE, Circuit Judge, and WEICK, Senior Circuit Judge.

CONTIE, Circuit Judge.

Dr. David Yashon appeals from a summary judgment entered by the district court in favor of Dr. William E. Hunt and forty-two other named defendants. Dr. Yashon brought this action under 42 U.S.C. § 1983 to compel defendants to reinstate him to the attending medical staff at the Ohio State University Hospitals in Columbus, Ohio. For the reasons set forth below, we vacate the judgment and remand the case to the district court.

Dr. Yashon is a duly licensed neurological surgeon, a tenured professor of surgery at the Ohio State University College of Medicine, and, from September 1969 to September 1981, was a member of the attending medical staff at the Ohio State University Hospitals. Although Dr. Yashon had been the subject of several disciplinary investigations instigated by defendant William Hunt, Chairman of the Division of Neurological Surgery, he had been reappointed annually to the attending medical staff.[1]

---

1. Ohio Administrative Code § 3335–101–05 provides that "appointments to the medical staff shall be for one year, renewable each year in accordance with the reappointment procedure set forth in the medical staff bylaws. Reappointments to the medical staff will be made

Prior to June, 1981, Dr. Yashon submitted his application for reappointment to the medical staff. On June 18, 1981, defendant Dr. Manuel Tzagournis, Dean of the Medical College, informed Dr. Yashon that Dr. Carey had refused to submit Yashon's name to the Medical Staff Administrative Committee (MSAC) and that, therefore, as of July 1, 1981, Dr. Yashon would no longer be a member of the medical staff.[2] Approximately one month later, on July 16, 1981, Dr. Yashon brought this civil rights action alleging that the procedure used by the defendants to deny his reappointment violated his fourteenth amendment due process rights. Dr. Yashon sought preliminary and permanent injunctive relief to compel the defendants to reinstate him to the medical staff. On July 17, 1981, the district court filed a consent order which reinstated Dr. Yashon until his request for a preliminary injunction was resolved.

The district judge later conferred with counsel for both sides, and the parties ultimately agreed to forward Dr. Yashon's application to the MSAC for disposition in the same manner as other such applications for reappointment. The judge did not suggest that the MSAC conduct an adversarial hearing in which counsel would be present and witnesses would be called and examined. Instead, he suggested that Dr. Yashon and Dr. Carey each make a presentation to the MSAC concerning Dr. Yashon's application.

Dr. Yashon received two written notices that dealt with the MSAC meeting. The first such notice was a letter dated August 12, 1981 from Dean Tzagournis that informed Dr. Yashon of the time and place of the meeting. The second notice was a letter dated August 17, 1981 from Dr. Michael Whitcomb informing Dr. Yashon of the general format of the meeting. Attached to the August 17 letter was a copy of a letter sent by Dr. Carey to Dean Tzagournis which listed fourteen specific charges against Dr. Yashon.

The MSAC meeting took place on September 1, 1981. After Dr. Carey and Dr. Yashon made their opening statements, Dr. Carey called and examined thirteen witnesses. Dr. Yashon was permitted to cross-examine the witnesses, but was not given the opportunity to call any witnesses on his behalf. At the conclusion of the meeting, the MSAC members deliberated and eventually voted thirteen to four to reject Dr. Yashon's application for reappointment to the medical staff. The defendants moved to vacate the July 17 consent order and then moved for summary judgment. In an extensive opinion and order, the district court found no due process violations arising out of the September 1 hearing, and granted summary judgment for the defendants. Dr. Yashon now brings this appeal, contending that the defendants were not entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c).

The requirements of procedural due process apply only to the deprivation of constitutionally protected liberty or property interests. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). If the plaintiff satisfies this threshold requirement by showing that he has been deprived of such an interest, the court must then determine whether the plaintiff was afforded sufficient procedural protection. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

In this case, the district court did not find that Dr. Yashon had a protected liberty or property interest in his position on the medical staff. Instead, it assumed that Dr. Yashon had such an interest in order to reach the plaintiff's due process arguments. The record, however, is certainly not free

annually by the [University Hospitals Board], and shall be for one year."

**2.** Ohio Administrative Code §§ 3335–101–06(A) and 3335–101–03(B) authorizes the Medical Staff Administrative Committee (MSAC) to make recommendations to the University Hospital Board's Joint Conference Committee concerning the appointment or reappointment of an applicant to the medical staff. The actual appointing authority is the University Hospitals Board. Ohio Administrative Code § 3335–101–05.

from doubt on this issue. *See Suckle v. Madison General Hospital,* 499 F.2d 1364 (7th Cir.1974). In *Suckle,* a neurological surgeon brought a § 1983 action alleging that the procedure used by the defendant hospital to deny his reappointment to the medical staff violated his fourteenth amendment due process rights. Like the present case, the hospital bylaws in *Suckle* provided that appointments to the hospital's medical staff were only for a period of one year. After acknowledging that a member of the medical staff could realistically expect to continue in that position for an indefinite period of time in the absence of cause for nonrenewal, the court found that this expectancy did not amount to a protected property interest. *Suckle,* 499 F.2d at 1366. The court did not, however, base its decision on this issue because it was not seriously contested by the parties at trial. Instead, it assumed that the plaintiff had a protected liberty or property interest in order to address the specific due process arguments.

■ After careful consideration, we will not follow the *Suckle* court's analysis and assume that Dr. Yashon had a protected liberty or property interest. The Supreme Court has repeatedly stated that the initial inquiry in a due process case of this type is to determine whether the plaintiff's interest is in fact within the fourteenth amendment's protection of liberty and property. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Since the district court failed to make the required initial determination, we remand this case to allow the district court to find whether or not Dr. Yashon does have a protected liberty or property interest in his position on the attending medical staff. In reaching this result, we express no opinion on the specific due process arguments raised by the plaintiff.

Accordingly, the judgment of the district court is VACATED and the case is REMANDED for further proceedings in accordance with this opinion.