David YASHON, M.D., Plaintiff-Appellant,

v.

Ian W. GREGORY, M.D., et al., Defendants-Appellees.

No. 83–3432.

United States Court of Appeals, Sixth Circuit.

Argued April 2, 1984.

Decided June 20, 1984.

Rudolph Janata (argued), Charles C. Warner, Thomas A. Young, Columbus, Ohio, for plaintiff-appellant.

Sandra J. Anderson (argued), John C. Elam, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for defendants-appellees.

Before LIVELY, Chief Judge, CONTIE, Circuit Judge, and WEICK, Senior Circuit Judge.

CONTIE, Circuit Judge.

Dr. David Yashon, the plaintiff, appeals from a district court order granting summary judgment to the defendants in this action brought pursuant to 42 U.S.C. § 1983. This is the second time that this case has come before this court. On the first appeal, the plaintiff challenged a district court judgment holding that the defendants had afforded him due process in deciding not to reappoint him to the attending medical staff at the Ohio State University Hospitals. This court declined to reach the merits because the district court had addressed the due process issue without first determining whether the plaintiff possessed a protectible property or liberty interest. *Yashon v. Hunt,* 696 F.2d 468 (6th Cir.1983). Finding the record "not free from doubt" on the latter question, *id.* at 469–70, this court remanded the case in order "to allow the district court to find whether or not Dr. Yashon does have a protected liberty or property interest in his position on the attending medical staff." *Id.* at 470.

After the remand, the plaintiff requested discovery because the protectible property or liberty interest issue had not been addressed by either party at any stage of the litigation. The district court, however, determined that the remanded issue could be decided on the basis of the original record and held that the plaintiff had no protected property or liberty interest. For the reasons set forth below, we vacate the judgment of the district court and remand for further proceedings.

I.

The background of this case was summarized in our prior opinion and will not be repeated here. It is necessary, however, to state certain procedural facts transpiring after this case was remanded to the district court. On January 14, 1983, the district court entered an order directing "counsel for the parties, on or before February 15, 1983, simultaneously to submit briefs on the issue propounded in the remand." The defendants did not file a motion for summary judgment on the remanded issue either before or after the issuance of this order. Nor did the order to submit briefs expressly indicate that the district court intended to grant summary judgment *sua sponte.*

The plaintiff filed three motions in response to the order to submit briefs. The first was a motion for an evidentiary hearing and oral argument in which the plaintiff asserted that the original record was inadequate to decide the remanded issue and that presentation of witnesses and exhibits was necessary. In a subsequent memorandum in response to the defendant's motion to quash discovery, the plaintiff reiterated that because the protectible property or liberty interest question had never been an issue in the litigation, the record was inadequate and discovery was needed. The second motion was for discovery of various documents in the defendants' possession that allegedly were relevant to whether the plaintiff possessed a protectible property or liberty interest. The third motion was a conditional motion under Federal Rule of Civil Procedure 56(f) for a continuance pending discovery. In the memorandum accompanying the motion, the plaintiff noted that the defendants had not filed a motion for summary judgment, but if the court were construing the procedural posture of the case as presenting a question for determination under Rule 56, then a continuance was necessary.

The district court did not rule on the plaintiff's motions as the deadline for filing briefs approached. The record is unclear about what next transpired. Plaintiff's

counsel has submitted an affidavit stating that he called the clerk of courts office on February 11, 1983 and inquired about the status of the motions. When the clerk told counsel that he was unaware of the status of the motions, counsel asked to be relieved of the briefing deadline. The clerk responded that he would attempt to resolve the problem of the February 15th deadline. Counsel was left with the impression that he did not have to file a brief until the court ruled on the motions. No order setting a new briefing schedule was ever entered and counsel did not file a brief.

On the other hand, defendants' counsel has filed an affidavit stating that on February 11, 1983, she received a telephone call from the clerk of courts office notifying her that the briefing deadline had been extended to March 17, 1983 pursuant to the request of plaintiff's counsel. The clerk confirmed this information on March 9. The defendants filed their brief on March 17.

Although the parties apparently agree that the district court vacated the February 15 briefing deadline, the record contains no order extending the deadline or otherwise establishing a new briefing schedule. The district court entered an order on May 18, 1983 granting summary judgment to the defendants on the remanded issue and denying the plaintiff's request for a Rule 56(f) continuance pending discovery. In determining whether the plaintiff had a protectible liberty interest, the court held that the plaintiff had to prove four elements: (1) that the state made a charge, or acted upon information, that stigmatized the plaintiff, (2) that the plaintiff actually was deprived of a tangible benefit, (3) that the plaintiff challenged the truth of the stigmatizing charge or information and (4) that the state publicly and voluntarily disclosed the stigmatizing charge or information or that the state used the charge or information to foreclose other employment opportunities (*e.g.*, placing such information in a personnel file available to other employers). Although the court held that the first three elements had been established, it ruled as to the fourth element:

There is no evidence or allegation before the court ... that the Medical Staff Administrative Committee voluntarily disclosed any of the charges in question to the public. On the contrary, the undisputed evidence shows that Dr. Carey's letter of August 14, 1981 was circulated only to members of the Committee during the hearing; that the Committee deliberated in private and voted on Dr. Yashon's application by secret ballot; and that the Committee declined to articulate any reasons or findings with respect to any specific charges in rendering its decision. In short, there was no public dissemination of stigmatizing allegations or findings by the Committee which would constitute a deprivation of Dr. Yashon's liberty interest ....

Similarly, there is no evidence or allegation that the plaintiff has been foreclosed from other employment opportunities as a result of a stigma or disability imposed by the Committee. (Citations omitted).

Hence, the court found that the plaintiff had not been deprived of a liberty interest.

The court then discussed the protectible property interest issue. It held that under Hospital bylaws effective prior to May 2, 1980, appointments to the attending medical staff were for one year. A physician had to apply for reappointment annually and no physician was entitled to automatic reappointment. Under bylaws effective on May 2, 1980 and thereafter, appointments to the attending medical staff remained limited to one year; there again was no provision for automatic reappointment. The court concluded that the plaintiff had no entitlement to reappointment under either set of bylaws.

The court further held that no genuine issue of material fact was present on two alternative theories concerning a mutually explicit understanding between the plaintiff and the defendants that the former would be reappointed to the attending medical staff. The plaintiff's first theory was that the OSU Hospitals had routinely reappointed the plaintiff and virtually all

other staff physicians in *pro forma* fashion over the years. The court rejected this theory on the ground that *de facto* annual reappointments were insufficient as a matter of law to create a property interest in view of the reappointment rules negating any intention of conferring permanent employment. Moreover, the plaintiff had not produced evidence of an explicit promise of automatic reappointment.

The plaintiff's second theory was that since the College of Medicine regarded an appointment to the attending medical staff as important to maintaining tenured faculty status, and since the plaintiff was a tenured professor of surgery in the College of Medicine, an understanding arose that he would automatically be reappointed to the Hospitals' attending medical staff. In other words, the plaintiff argued that appointments to the Hospitals' attending medical staff and to tenured faculty positions in the College of Medicine had in practice been linked.[1]

The court rejected this theory because allowing the plaintiff's status as a tenured professor in the College of Medicine to affect the determination of whether he would be reappointed to the Hospitals' medical staff would prevent the Hospitals from independently evaluating the plaintiff's ability to treat patients in a competent and effective manner. The court further held that the standards for making appointments to the Hospitals' attending medical staff and to the College of Medicine's tenured faculty were entirely separate. Moreover, the court held that even if the plaintiff might be unable to maintain his academic tenure because a lack of hospital privileges might prevent him from satisfying teaching, service or research obligations, no property interest in reappointment to the Hospitals' attending medical staff existed:

The denial of staff privileges at University Hospitals may create a disability that would prevent Dr. Yashon from meeting his defined teaching, service, or research obligations, although the Court is in no position to decide that question. The point is, however, that Dr. Yashon's tenure rights guarantee his continuing status as a faculty member *conditioned* upon his ability to perform his teaching, service and research obligations; his tenure rights do *not* guarantee that Dr. Yashon will forever be capable of meeting those conditions. In short, while the denial of medical staff privileges may ultimately impair Dr. Yashon's tenure status, it does not deprive Dr. Yashon of any right conferred by his tenure status. [Emphasis original.]

Finally, the district court addressed the plaintiff's motion for a continuance pending discovery. The court initially held that the plaintiff had inadequately explained why he had been unable to obtain discovery on the property and liberty interest claims even though the case had been pending for several years. Second, the court faulted the plaintiff for not identifying what specific information he expected to obtain through discovery. Third, the court held that if the plaintiff had relied upon a mutually explicit understanding with the defendants, then the plaintiff should have possessed personal knowledge of that understanding and been able to identify it without discovery. Thus, the court dismissed the plaintiff's discovery request as a "fishing expedition undertaken in the hope of uncovering some *post hoc* justification for his claim."

## II.

 We conclude that the judgment must be vacated for two reasons, the first of which is that the district court did not follow proper procedures in granting sum-

---

1. The district court held that the plaintiff was claiming that he could not be denied reappointment without being afforded the protections of the College of Medicine's process for removing tenure. Although language in the complaint supports this interpretation, *see* complaint at ¶ 50, the plaintiff has expressly eschewed this argument in his brief. *See* appellant's brief at 36. The plaintiff now only claims that reappointment to the attending medical staff may not be denied without affording him due process. This theory also was pleaded in the complaint. *See* complaint at ¶¶ 46, 54–62.

mary judgment. Since the defendants never filed a summary judgment motion on the remanded issue, the district court's decision must be treated as a *sua sponte* grant of summary judgment. The clearly established rule in this circuit is that a district court must afford the party against whom *sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond. *Kistner v. Califano*, 579 F.2d 1004 (6th Cir.1978). The party against whom *sua sponte* summary judgment has improperly been entered must, however, demonstrate prejudice in order to obtain relief on appeal. *See Harrington v. Vandalia-Butler Board of Education*, 649 F.2d 434, 436 (6th Cir.1981); *Hoopes v. Equifax, Inc.*, 611 F.2d 134, 136 (6th Cir. 1979).

■ The plaintiff in this case did not receive appropriate notice of the district court's intention to enter summary judgment. Since the defendants did not move for summary judgment and since the order of January 14, 1983 did not mention the possibility of summary judgment being entered, the plaintiff was justifiably unsure about the procedural posture of the case. That the plaintiff was unsure about the court's intentions is evidenced by the language of the conditional Rule 56(f) motion in which the plaintiff requested a continuance *if* the court were considering disposing of the case under Rule 56. We hold that where a district court is contemplating entering *sua sponte* summary judgment against one of the parties, that party is entitled to unequivocal notice of the court's intentions. The plaintiff did not receive such notice here.

We further note that the plaintiff's confusion about the district court's intentions may have been compounded by his counsel's conversation with the clerk of courts on February 11, 1983. Counsel's affidavit indicates that he was informed on that date that he need not file a brief until the court

ruled on his client's motions. Under these circumstances, the plaintiff could not be expected to know that the court intended to enter summary judgment.

We recognize that the affidavit of defendants' counsel presents a different version of the facts.[2] Nevertheless, this affidavit at most establishes that a new briefing schedule was informally set rather than that the district court notified the plaintiff of its intention to dispose of the case. If the formal order of January 14, which established a briefing schedule but did not mention the possibility of summary judgment, was inadequate, the similar informal order of February 11 also was inadequate.

■ The record further indicates that the plaintiff was not afforded a fair opportunity to show why summary judgment should not be granted. Even if it were held that the plaintiff received unequivocal notice of the district court's intention to grant summary judgment, the fact remains that plaintiff's counsel conditionally moved for a continuance pursuant to Rule 56(f) on the ground that the record was insufficient to decide the remanded issues. We hold that the plaintiff was entitled to a ruling on this properly tendered objection before the court disposed of the entire case. Even if the plaintiff were incorrect in arguing that the record was insufficient,[3] he was entitled to be so informed in order that he might respond to the district court's proposal to grant summary judgment with whatever arguments and evidence in the record that he could muster. By simultaneously denying the plaintiff's motion for a continuance and granting summary judgment, the district court deprived the plaintiff of the latter opportunity. This court has previously held that not having an opportunity to respond constitutes prejudice. *See Harrington*, 649 F.2d at 436; *Kistner*, 579 F.2d at 1006.

**2.** We do not decide which affidavit contains the more accurate description of the facts. Indeed, the affidavits may not be inconsistent with each other because it is possible that plaintiff's and

defendants' respective counsel were told different things by the clerk of courts office.

**3.** We address the issue of the adequacy of the record in Part III of this opinion, *infra*.

█ Moreover, the record contains absolutely no evidence that the plaintiff waived the opportunity to respond. *Cf. Kistner,* 579 F.2d at 1006 (waiver of ten-day notice period). As has been indicated, the plaintiff was entitled to wait until his Rule 56(f) motion was ruled upon before filing a brief. Since the district court did not comply with precedent governing the granting of *sua sponte* summary judgments, the judgment must be vacated and the case remanded for further proceedings.

### III.

█ Although the judgment must be vacated for procedural reasons, we further hold that genuine issues of material fact remain concerning the property interest claim and that the plaintiff is entitled to discovery on that question. In addressing this claim, we are mindful, of course, of the rule that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Moreover, in deciding whether the defendants have conclusively shown that no genuine issue of material fact is present, the record and all inferences drawable therefrom must be read in the light most favorable to the plaintiff. *See Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

While it is clear that the plaintiff has no entitlement to continuing employment under the OSU Hospitals' bylaws concerning reappointment, he contends that an entitlement arose pursuant to a mutually explicit understanding between himself and the Hospitals' administration. *See Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). The district court held that since the plaintiff had not identified the understanding or understandings upon which he allegedly relied, no genuine issue of material fact existed and discovery was unwarranted. We disagree with this conclusion; the record indicates that the plaintiff identified two potential sources of a mutually explicit understanding.

First, the plaintiff argued that the annual reappointment process was entirely *pro forma* and that all tenured College of Medicine faculty members on the OSU Hospitals' attending medical staff were routinely reappointed. Certain statements made by participants at the September 1, 1981 meeting of the Medical Staff Administrative Committee, including the plaintiff, indicate that this may indeed have been the case (App. at 257–59). The question, therefore, is whether reliance upon a longstanding pattern of *pro forma* reappointments to the attending medical staff sufficiently alleges a mutually explicit understanding of continued employment between the plaintiff and the defendants so that the plaintiff may obtain discovery and avoid summary judgment.

In *Sindermann,* the Supreme Court held that absent explicit contractual language, an employee may still have a property interest in continued employment if an agreement between the employer and the employee can be implied or if the unwritten "common law" of the work place demonstrates that certain employees are entitled to continued employment. 408 U.S. at 601–02, 92 S.Ct. at 2699–2700. Any such claim of implied entitlement must be decided by reference to state law. *See id.* at 602 n. 7, 92 S.Ct. at 2700 n. 7; *Bishop v. Wood,* 426 U.S. 341, 344 & n. 7, 96 S.Ct. 2074, 2007 & n. 7, 48 L.Ed.2d 684 (1976). Although we have not found an Ohio case accepting or rejecting an employee's claim of entitlement to employment that was based on allegations of reliance on *pro forma* and routine reappointments, the Ohio courts clearly have accepted the notion than an employee's contractual rights may be supplemented by *Sindermann*-type understandings. *See Walton v. Montgomery County Welfare Department,* 69 Ohio St.2d 58, 64, 430 N.E.2d 930 (1982); *Depas*

*v. Highland Local School District Board of Education,* 52 Ohio St.2d 193, 198, 370 N.E.2d 744 (1977); *State ex rel Trimble v. State Board of Cosmetology,* 50 Ohio St.2d 283, 285–86, 364 N.E.2d 247 (1977). In light of the fact that other courts have held that historical reappointment rates and prior treatment of the plaintiff (and other similarly situated) can be evidence of a mutually explicit understanding, *see Orloff v. Cleland,* 708 F.2d 372, 377 (9th Cir.1983); *Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 367 (9th Cir.1976), we perceive no reason why the Ohio courts would reject the plaintiff's theory out of hand. We hold that under the circumstances of this case, the plaintiff has adequately asserted the existence of a mutually explicit understanding between the attending medical staff (including the plaintiff) and the Hospitals' administration that the staff would be automatically reappointed. The plaintiff is entitled to discovery on this issue. At this stage of the proceedings, a genuine issue of material fact clearly is present as to whether such an understanding existed between the parties.

Although the district court held that in view of the Hospitals' reappointment bylaws, a pattern of routine annual reappointments could not establish a *Sindermann*-type understanding as a matter of law, the authorities relied upon by the district court and the defendants are distinguishable. In several of the cases, the plaintiff did not even proceed under the mutually explicit understanding theory. *See Gray v. Union County Intermediate Education District,* 520 F.2d 803 (9th Cir.1975); *Brouillette v. Board of Directors,* 519 F.2d 126 (8th Cir. 1975); *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1 (7th Cir. 1974); *Scheelhaase v. Woodbury Central Community School District,* 488 F.2d 237 (8th Cir.1973), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974). The other cases involved *Sindermann* claims in situations where formal tenure systems existed. Many courts, including this court, have held that the presence of a formal tenure system precludes reliance upon *de facto* understandings because one purpose

of erecting a tenure system is to avoid the latter type of claim. *See Ryan v. Aurora City Board of Education,* 540 F.2d 222, 227 (6th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977) (arising from Ohio); *McElearney v. University of Illinois at Chicago Circle Campus,* 612 F.2d 285, 291 (7th Cir.1979); *Haimowitz v. University of Nevada,* 579 F.2d 526, 528 (9th Cir.1978); *Willens v. University of Massachusetts,* 570 F.2d 403, 404–05 (1st Cir.1978); *Siler v. Brady Independent School District,* 553 F.2d 385, 388 (5th Cir.1977); *see also Eichman v. Indiana State University Board of Trustees,* 597 F.2d 1104, 1109 (7th Cir.1979) (doubtful that a *de facto* understanding is possible in the presence of a formal tenure system).

These cases are distinguishable because, unlike the situation in the College of Medicine, no tenure system is in effect at the OSU Hospitals. Thus, to hold that the plaintiff may rely upon any understanding he may mutually have reached with the Hospitals' administration would not defeat the purposes of a tenure system. The defendants contend that it is extremely unlikely that the OSU Hospitals would agree to afford permanent employment to any physician because the Hospitals are outside the academic sphere in which tenure arrangements are common and because affording permanent employment might prevent the Hospitals from dismissing physicians who fail to provide competent and effective medical care. Although the defendants' argument may ultimately prove to be correct, the question at this point in the litigation nevertheless remains whether the OSU Hospitals have in fact reached an understanding with physicians on the attending medical staff that the physicians will automatically be reappointed. That this kind of arrangement would be uncommon or even questionable hospital practice does not preclude the possibility that such an arrangement existed in this case. The plaintiff is entitled to discovery.

The plaintiff's second *Sindermann* theory is that since the College of Medicine regards an appointment to the OSU Hospi-

tals' attending medical staff as important for those possessing tenured faculty status, and since appointments to the Hospitals' attending medical staff and to the College of Medicine's tenured faculty have in fact been linked, a mutually explicit understanding arose that tenured faculty members would automatically be reappointed to the attending medical staff. There is evidence in the record to support this claim. Comments were made, for instance, at the September 1, 1981 meeting of the Medical Staff Administrative Committee that hospital staff privileges have been "tied to faculty appointments" (App. at 259). Moreover, on August 23, 1978 the Dean of the College of Medicine sent the plaintiff a letter, reading in pertinent part:

> As a full time member of the faculty in the Ohio State University College of Medicine, you are obligated to conduct all your patient care activities in the University Hospitals—this, absent some special, agreed upon arrangement which has been found to be in the College's best interests. No such special arrangement has been approved for you.
>
> It is expected, therefore, that you will continue to fulfill your obligation as a full time faculty member on this campus. Failure to do so will be considered a breach of the conditions of your employment.

A copy of this letter was sent to defendant Carey at the OSU Hospitals.

This letter demonstrates that tenured faculty members were required to provide all patient care services at the OSU Hospitals. A permissible inference, *see Smith v. Hudson*, 600 F.2d at 63, from the facts of this arrangement is that an understanding existed that tenured faculty members like the plaintiff would be automatically afforded hospital staff privileges so that this duty could be discharged. Although we agree with the district court that the plaintiff's tenure rights as a professor in the College of Medicine do not insure that he

will forever be able to satisfy the teaching, research and service conditions attendant to his tenured status, the plaintiff is not asserting that his tenure rights were the source of his entitlement to reappointment to the attending medical staff. Rather, the plaintiff merely is claiming that there existed a mutually explicit understanding between the defendants and members of the attending medical staff who had tenure in the College of Medicine that the latter would automatically be reappointed. There may, of course, have been a collateral arrangement between administrators of the College of Medicine and administrators of the OSU Hospitals providing that tenured faculty would automatically be reappointed to the attending medical staff. The plaintiff is not asserting, however, that any understandings between the defendants and members of the attending medical staff were legally required because of the physicians' tenure rights.[4] The plaintiff's theory simply is that he and other attending medical staff members relied upon an understanding with the defendants that tenured faculty status and hospital privileges would be linked. Although the defendants have emphasized certain evidence indicating that there was no connection between possessing tenured status and possessing hospital staff privileges,[5] we hold that the defendants have not conclusively demonstrated that no genuine issue of material fact is present. The plaintiff is entitled to discovery on this theory.

The defendants raise two other arguments about why the plaintiff is not entitled to discovery. First, the defendants contend that since this litigation has been pending for several years, the plaintiff should have requested discovery on the property interest question long ago. This assertion, however, ignores the fact that neither the parties nor the district court thought that the presence or absence of a protectible property interest was an issue

---

**4.** *See also* footnote 1 *supra.*

**5.** The defendants have pointed out, for example, that even though the plaintiff is no longer a

member of the attending medical staff, he remains a tenured professor in the College of Medicine.

until the case was remanded. Since the plaintiff requested discovery on this issue promptly after the remand, the defendants' argument is without merit.

 Second, the defendants contend that a district court's decision about whether to reopen the record after a remand should not be disturbed absent an abuse of discretion. *See, e.g., Ramsey v. United Mine Workers of America,* 481 F.2d 742, 753 (6th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 473 (1973); *Pittsburgh Press Club v. United States,* 579 F.2d 751, 755 (3d Cir.1978). Although the defendants have identified the correct standard of review, we hold that the district court abused its discretion in this case. As has been indicated, the plaintiff has adequately asserted that two mutually explicit understandings gave him a property entitlement to reappointment to the OSU Hospitals' attending medical staff. While the original record contains some material that is relevant to these claims, that record nevertheless is wholly inadequate to sustain a summary judgment for the defendants. As we stated when this case was first presented to this court, the record "certainly is not free from doubt" on the property interest issue.

The cases cited by the defendants in which district courts properly declined to reopen records after remands are distinguishable. *See Purex Corp. v. Proctor & Gamble Co.,* 664 F.2d 1105 (9th Cir.1981), *cert. denied,* 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982); *Otero v. Mesa County Valley School District No. 51,* 628 F.2d 1271 (10th Cir.1980); *Blizard v. Frechette,* 601 F.2d 1217 (1st Cir.1979); *Hennessy v. Schmidt,* 583 F.2d 302 (7th Cir. 1978). Since the question at issue on remand had been fully litigated at trial in all of these cases, and since the remand in each case was only for the purpose either of applying a correct legal standard (*Hennessey, Purex Corp.* and *Blizard*) or of correcting technical deficiencies in the findings (*Otero*), the district courts did not abuse their discretion in those cases in declining to reopen the record. In the present case, very little record has been made concerning the property interest issue. Under these circumstances, we hold that the district court was required to allow the plaintiff to undertake discovery.

### IV.

 Although the district court's judgment concerning the liberty interest issue also must be vacated for procedural reasons, we comment briefly on the merits of that claim. The parties agree that in order to establish a protectible liberty interest, the plaintiff must demonstrate, among other things, that the defendants publicly and voluntarily disclosed stigmatizing charges or information or that they maintained a personnel file containing such charges or information that would be made available to other employers. *See Kendall v. Board of Education,* 627 F.2d 1, 5 (6th Cir.1980). A plaintiff is not deprived of a liberty interest "when he simply is not rehired in one job but remains as free as before to seek another." *Roth,* 408 U.S. at 575, 92 S.Ct. at 2708.

The district court granted summary judgment to the defendants on this issue because the plaintiff had not even alleged voluntary public disclosure or maintenance of an inaccurate personnel file. Moreover, the district court held that the record concerning the Medical Staff Administrative Committee's treatment of this matter indicated that no disclosure had occurred. Were it not for the procedural impediment mentioned above, we would be inclined to affirm this portion of the judgment. On remand, it would not be improper for the district court, on the record that exists at that time, to reevaluate whether summary judgment should be granted on the liberty interest question.

### V.

The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.