Richard A. BUTCHER, Thomas H. Johnson, James Thomas and Daniel J. Velkovich, individually and as Class Representatives, Plaintiffs,

v.

GERBER PRODUCTS COMPANY, Defendant.

No. 1:98–CV–585.

United States District Court, W.D. Michigan, Southern Division.

March 30, 2000.

H. Rhett Pinsky, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI, Richard N. Gray, Meyers, Tersigni, Feldman & Gray, New York City, David M. Monachino, Mandel & Resnik, PC, New York City, Daniel L. Berger, Bernstein, Litowitz, Berger & Grossman, LLP, New York City, for plaintiffs.

Charles S. Mishkind, Thomas J. Heiden, Miller, Canfield, Paddock & Stone, PLC, Grand Rapids, MI, John F. Wymer, III, Karen D. Wildau, Jacqueline E. Kalk, Kathryn B. Vargo, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, Robert D. VanderLaan, Bradley C. White, VanderLaan & Associates, PC, Grand Rapids, MI, for defendant.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

Four Plaintiffs filed this collective action pursuant to 29 U.S.C. § 626(b)[1] on behalf of themselves and as representatives of a class of approximately 216[2] similarly situated former employees of the Defendant, Gerber Products Company ("Gerber"), alleging that Gerber's elimination of its sales force in January 1998 violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. They further allege that Gerber violated the ADEA when, in anticipation of the elimination of its sales force, Gerber amended its severance benefits plan in August 1997, to eliminate years of service as a factor in calculating benefits. Before this Court are Gerber's Motion to Decertify and Dismiss and Gerber's Motion for Summary Judgment as to the Plaintiffs' disparate treatment termination claims. On March 17, 2000, this Court heard extensive oral argument on both motions. Having thoroughly

1. The ADEA does not permit traditional FED. R.CIV.P. 23 class actions. Section 626 of the ADEA provides for collective actions brought pursuant to § 216 of the FLSA. Section 216 requires that plaintiffs "opt-in" to the class as opposed to "opting out" of a typical Rule 23 class action.

2. The precise number of opt-in plaintiffs is unclear. The Plaintiffs' brief states that there are 214 whereas Gerber states that there are either 215 or 216. The specific number is irrelevant for purposes of resolution of the issues presented. The Court utilizes, without making a finding, the number of 216. Gerber's Mtn to Dismiss, Exh.D. Stan Houk Aff.

reviewed the briefs, evidence, deposition testimony, and the relevant case law, the Court grants Gerber's Motion for Summary Judgment for the reasons that follow.[3]

## I

The Plaintiffs are former Gerber employees forty years of age and older. Richard A. Butcher ("Butcher") is a resident of Centereach, New York, and was employed as a National Account Manager for Gerber prior to his termination. Butcher was 53 years old when he was terminated and had been employed by Gerber for 33 years.

Plaintiff Thomas Johnson ("Johnson") is a resident of Mesquite, Texas, and was employed as a National Account Manager for Gerber prior to his termination. Johnson was 49 years old when he was terminated and had been employed by Gerber for more than 27 years.

Plaintiff James H. Thomas ("Thomas") is a resident of Shreveport, Louisiana, and was employed as a Senior Sales Representative for Gerber prior to his termination. Thomas was 47 years old when he was terminated and had been employed by Gerber for more than 18 years.

Plaintiff Daniel J. Velkovich ("Velkovich") is a resident of Allentown, New Jersey, and was employed as a National Account Manager for Gerber prior to his termination. Velkovich was 55 years old when he was terminated and had been employed by Gerber for more than 34 years.

Gerber, a subsidiary of Novartis, a Swiss-based company, manufactures and distributes baby and infant food products.

In August 1997, Gerber amended its severance plan to eliminate length of service as a factor in calculating severance benefits. On January 6, 1998, Gerber's Chief Executive Officer Alfred A. Piergallini ("Piergallini") announced the decision to eliminate Gerber's direct sales force and go to a independent broker system. Gerber explained that the ongoing consolidation of accounts, the increasing role of technology, and the movement toward centralized buying decisions had significantly diminished the effectiveness of local selling capabilities and that the changes in the marketplace had created an environment where a direct sales group was not as effective in responding to major customers as a large, sophisticated brokerage organization.[4] Gerber salespeople were advised that their positions would be eliminated effective February 28, 1998. Gerber's conversion to a broker sales force eliminated all employees in grades AA, 01, 02, and 03 ("merchandisers"). Of the 391 employees terminated, 265 were forty or older and 165 were fifty and older.[5] The post conversion sales organization retained sixty-five persons.[6] Employees in grade levels 04 and above were candidates for the sixty-five positions remaining after the conversion. These employees were selected by a group comprised of managers Randy Hinshaw, Richard Grainger, Jim Walkenhorst, Mark Malone and Lee Van Syckle.[7]

Of the employees comprising this collective action, 144 were in grade levels of 03 and below and 68 were in grade levels of 04 and above, including three of the four named Plaintiffs, Butcher, Velkovich and Johnson.[8]

On February 23, 1998, the named Plaintiffs filed charges with the EEOC alleging that their termination from Gerber was the result of age discrimination.[9] On March 11, 1998, they received their Notices of Right to Sue from the EEOC.[10] On

---

3. Because Gerber's motion for summary judgment is dispositive, the Court need not reach the merits of the claims raised in the motion to decertify and dismiss.

4. Pls' Opp'n to Gerber's Mtn for SJ, Exh. 24.

5. Pls' Opp'n to Gerber's Mtn for SJ at 26–27.

6. Van Syckle Dep. at 93.

7. Van Syckle Dep. at 127.

8. Def's Mtn to Decertify, Houk Aff. ¶ 4.

9. Compl. ¶ 8.

10. *Id.*

March 13, 1998, the named Plaintiffs filed this action in the United States District Court for the Southern District of New York, seeking declaratory and injunctive relief, compensatory and liquidated damages, attorneys fees and other appropriate legal and equitable relief.

On June 2, 1998, the court granted summary judgment to the Plaintiffs on the issue of whether they had waived their right to assert a claim under the ADEA by signing the Release and Waiver Agreement provided to them by Gerber. *Butcher v. Gerber Products Co.,* 8 F.Supp.2d 307 (S.D.N.Y.1998).

On August 3, 1998, the court transferred the case to the United States District Court for the Western District of Michigan pursuant to § 1404(a). *Butcher v. Gerber Products Co.,* No. 98 CIV. 1819, 1998 WL 437150 (S.D.N.Y. Aug 03, 1998).

On September 20, 1999, this Court denied Gerber's motion for partial summary judgment as to the Plaintiffs' severance plan claim and dismissed the Plaintiffs' disparate impact claims on the basis that such claims are not cognizable under the ADEA.[11]

## II

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriately granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FedR. Civ.P. 56(c). The Court must view the record and any inferences to be drawn from the underlying facts in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Entry of summary judgment is

mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The moving party bears the initial burden of showing that no genuine issues of material fact exist. *Id.* at 321, 106 S.Ct. 2548. Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III

The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). It is well-settled in this circuit that in an intentional age discrimination suit, the ultimate question is whether age was a determining or motivating factor in the employment decision which adversely affected the claimant. *See, e.g., Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir.1996) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)).

An age-discrimination plaintiff may prove his claim by demonstrating either direct evidence of discrimination or through circumstantial evidence by proceeding under the framework established in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Here, the Plaintiffs allege that there is substantial direct evidence of discrimination related to the discharge of Gerber's

11. Docket # 53.

sales force to permit this case to be tried as a mixed motives case pursuant to *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In the alternative, they contend that they have sufficient evidence to prove age discrimination under the *McDonnell Douglas* model.

## A

Gerber argues that the Plaintiffs' evidence is insufficient to present a "mixed motives" age discrimination case. "[D]irect evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor." "With direct evidence, the existence of unlawful discrimination is 'patent.'" *Bartlik v. United States Dep't of Labor,* 73 F.3d 100, 103 n. 5 (6th Cir.1996) (citation omitted); *see also Lautner v. American Tel. & Tel. Co.,* No. 95–3756, 1997 WL 26467, at *3 (6th Cir. Jan.22, 1997) ("'Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions.'") (quoting *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 40 (5th Cir.1996)). It is the "rare situation" when direct evidence of discrimination is available. *Kline v. Tennessee Valley Authority,* 128 F.3d 337, 348 (6th Cir.1997). "[T]his circuit has required workplace remarks furnished as direct evidence of discrimination to be clear, pertinent, and directly related to decision-making personnel or processes in order to prove discriminatory intent." *Wilson v. Wells Aluminum Corp.,* No. 95–2003, 107 F.3d 12 (table), 1997 WL 52921, at *5 (6th Cir. Feb.7, 1997). *See Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir.1998) (noting that direct evidence in an ADA claim "would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'") In *Phelps v. Yale Security, Inc.,* 986 F.2d 1020, 1025–26 (6th Cir.1993), the court held that where an employer, eight months before laying off the plaintiff, told her that she had been transferred from a more responsible position because she was too old for it, and a month later told her that her fifty-fifth birthday was cause for concern, such comments were too abstract, isolated, and ambiguous to allow a jury verdict for the plaintiff to stand.

With these principles in mind, the Court examines the Plaintiffs' alleged direct evidence of age discrimination. The Plaintiffs offer the deposition testimony of Former Vice President Richard Grainger that he heard Piergallini state that he thought the problem with declining sales was attributable to the fact that the sales force was too old.[12] Grainger further stated that there was a "directive" from Al Gorsky, Gerber's Vice president of Sales from 1987 until 1993, not to hire people over forty.[13] Gorsky was "Al Piergallini's voice" and "he was just echoing what he was told." [14] Grainger further stated that "Piergallini was very open and I couldn't count the number of times he talked about the old guys. 'We have enough old guys.'" [15] Former Vice–President of Sales for the Northern Region Randall Hinshaw testified that it was his "understanding" that "[Piergallini] had a concern that people in a position for an extended period of time could become stale and set in their ways and difficult, or maybe I'm adding this, but difficult to move through a change environment." [16] Hinshaw also said that in the November 12, 1997, meeting to select those 04 grade members and above who would be retained after the conversion, Piergallini crossed off Jay Corners' name as a candidate because he was "old Gerber." [17]

■ The testimony, if believed, does not require the conclusion that age was in fact a motivating factor in Gerber's decision to terminate the sales force. The Plaintiffs'

---

12. Grainger Dep. at 74.

13. Grainger Dep. at 46.

14. Grainger Dep. at 46.

15. Grainger Dep. at 74.

16. Hinshaw Dep. at 28.

17. Hinshaw Dep. at 121–22.

evidence is at most circumstantial evidence, the relevance of which is provided by inference. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir.1994) (noting, in an age discrimination case, that evidence requiring a jury to infer a fact is not direct evidence). The statements attributed to Piergallini did not relate to the challenged business decision and in fact, the Plaintiffs provided no temporal setting for the remarks. "[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir.1998) (internal quotation marks omitted). "[A] proffer of direct evidence 'must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question.'" *Cowan v. Glenbrook Security Services, Inc.*, 123 F.3d 438, 443 (7th Cir.1997). With respect to the alleged comments attributed to Gorsky, Piergallini alone made the decision to contract with food brokers. "[S]tatement[s] by an intermediate level management official [are] not indicative of discrimination when the ultimate decision to discharge is made by an upper level official." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161 (6th Cir.1990) Moreover, Gorsky retired four years before the decision was made to convert,[18] rendering any comments attributed to him remote. There is no direct causative connection between the Plaintiffs' evidence of age-biased statements and the events leading to the termination of the sales force.

## B

Gerber next argues that it is entitled to summary judgment because the Plaintiffs fail to state a prima facie case under the *McDonnell Douglas* burden shifting framework because they cannot identify younger employees who were treated more favorably, and offers *May v. Shuttle, Inc.*, 129 F.3d 165 (D.C.Cir.1997), *cert. denied*, 524 U.S. 927, 118 S.Ct. 2320, 141 L.Ed.2d 695 (1998) as support. Specifically, Gerber contends that because all the employees in grades AA–03 were eliminated, there was no disparate treatment. Although the Court concurs that the Plaintiffs fail to state a prima facie case, it does so on alternate grounds.

In *May,* the employer furloughed eighty-eight individuals in the fleet service group and outsourced their jobs. The plaintiffs contended that the decision was motivated by age. The Court of Appeals for the District of Columbia concluded that the Plaintiffs failed to meet their prima facie burden because they could not show that younger employees were treated more favorably than they were. *Id.* at 173. *May* however is distinguishable because the framework used had not been adapted as it has been in the Sixth Circuit.

Pursuant to *McDonnell Douglas,* a plaintiff may establish a prima facie case by demonstrating that: (1) he or she was aged forty or over; (2) he was qualified to do the job; and (3) he or she was discharged. In the Sixth Circuit the fourth element of the prima facie proof for a "traditional" disparate treatment case has been modified. Recognizing that the elements in a prima facie case had to be adapted in instances such as a reduction in force or a reorganization because the employee may not be able to identify similarly situated employees outside the protected class who received more favorable treatment, the Sixth Circuit has supplanted the forth prong of the prima facie showing by a requirement that the plaintiff proffer additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998); *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990); *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 941 (6th Cir.1987). *See also Allen v. Diebold*, 33 F.3d 674, 678 (6th Cir.1994) ("plaintiffs in a plant closing

---

**18.** Def's Mtn for SJ at 7.

case must show that an employer's decisions regarding which factories to close ... were based on considerations of the ages of the workers at those factories.")

■ Based on a review of the foregoing case law, the Court concludes that the Plaintiffs' failure to identify comparable non-protected persons is not necessarily fatal to discharging their prima facie burden. Although the Plaintiffs in this case could not identify comparable non-protected employees who were treated better to set forth their prima facie case, they must present additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled them out for discharge for an impermissible reason. It is a relatively high standard for a plaintiff to meet, *King v. Heal Thrinder, Inc.*, No. 98–2046, 194 F.3d 1312 (table), 1999 WL 825122, *1 (6th Cir. Oct.08, 1999), and a hurdle that the Plaintiffs in this action cannot overcome. A review of the evidence reveals that with regard to the termination of grades AA–03, the Plaintiffs have failed "to eliminate the most common non-discriminatory explanations" for the termination of the sales department, or present "evidence of actions taken by the employer which, if unexplained, are more likely than not based on consideration of impermissible factors." *Allen*, 33 F.3d at 678. The Plaintiffs also lack evidence of discrimination in the selection process of the remaining employees. Because the Plaintiffs fail to demonstrate that Gerber's decisions were based on a consideration of the ages of the sales employees, they fail to establish a prima facie case.

## C

Assuming, arguendo, that the Plaintiffs sufficiently demonstrate a prima facie case and thus create a presumption of discrimination that Gerber discriminated unlawfully, the burden of production shifts to Gerber to articulate a legitimate, non-discriminatory reason for its actions. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089.

Gerber explains that the decision was a strategic one designed to reduce cost, improve sales and maintain a competitive posture. According to Gerber and uncontradicted by the Plaintiffs, Gerber's sales decreased 12.4% between 1995–97 while the cost of maintaining the direct sales force increased.[19] The market itself was changing and management perceived the company as "behind the curve."[20] Consolidation was occurring in the grocery industry which resulted in the centralization of buying decisions.[21] Within the accounts, decisionmaking was moving away from the managers of individual stores and instead was being made at the corporate level.[22] Piergallini testified that Gerber's financial performance was unacceptable. In May 1996, he brought in Greg Brown from outside the company as a National Sales Manager to "bring fresh ideas in to the company."[23] In April 1997, a new National Sales Training manager was hired. By August 1997, however, Piergallini concluded that efforts to evolve the sales force through training were just not working and that he needed to look at alternatives to the direct sales force.

Gerber's competitors, Heinz and Beechnut, had used brokers for several years. Brokers offered substantial advantages over a direct sales force. They were able to visit stores on a weekly basis whereas Gerber's sales force could not visit a store more than once a month. In addition to more effective marketing penetration at the corporate level, the use of a broker ties selling expense to actual sales. According to Gerber, "variabilizing" of costs is one of the factors that makes converting to brokers attractive. Since food brokers are paid a fixed commission based only on what they actually sell, using food brokers ensures that costs stay in line with sales.[24]

**19.** Van Syckle Aff. ¶ 5.

**20.** Pls' Opp'n to Gerber's Mtn for SJ, Exh. 10.

**21.** Gerber's Mtn for SJ at 10.

**22.** Brown Dep. 147–48.

**23.** Brown Dep. 13.

**24.** Van Syckle Aff. ¶ 10

Using a broker would permit Gerber to realize a significant reduction in expenses. Gerber's direct sales expense was estimated at 6.6% of sales [25] whereas the estimated cost for a broker was 4.0%.[26]

Piergallini alone made the decision to utilize food brokers and engaged a consultant, Stephen Rutledge, to recommend a process for transitioning to a broker system.

■ Gerber has advanced a strong, objectively verifiable set of reasons for restructuring its work force. Having done so, the burden shifts to the Plaintiffs to show that the offered reasons are pretextual. In order to demonstrate pretext, the Plaintiffs must adduce evidence that the employer's articulated reasons: (1) had no basis in fact; (2) were not the actual reasons; or (3) were insufficient to explain the discharge. *Manzer,* 29 F.3d at 1084.

The Plaintiffs challenge Gerber's stated nondiscriminatory reasons arguing that it is a matter of "credibility" to be determined by the jury.[27] As evidence of a discriminatory corporate culture, the Plaintiffs point to Grainger's testimony that Gorsky and Piergallini did not wish to hire persons over forty and testimony by Former District Manager Linda Chang that in 1994, Grainger directed her to use the birthday list to eliminate three positions going from the oldest person down.[28]

> Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff.... While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to

the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.

*Ercegovich,* 154 F.3d at 356 (internal quotation marks and citations omitted). However, "without evidence that illegal animus affected the contested employment decision itself, such 'atmospheric' evidence is not enough to withstand summary judgment." *Dobbs–Weinstein v. Vanderbilt University,* 1 F.Supp.2d 783, 798 (M.D.Tenn.1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 1421, —— L.Ed.2d —— (2000).

The Plaintiffs offer evidence that at the National Sales Meeting in Chicago in April 1997, Gerber's then Vice–President of Sales, Greg Brown, gave a "Sales Assessment" presentation which identified Gerber's *"Strengths," "Weaknesses," "Opportunities,"* and *"Threats."* ("SWOT Analysis") The three threats to Gerber were identified as: (1) declining birth rates; (2) competition, and (3) an "old sales organization." The Plaintiffs also point to documents prepared by Gerber's human resource department breaking down the sales force by age.[29] The most probative evidence consists of the alleged ageist remarks by Piergallini. Grainger testified that: (1) "In my opinion, old guys, old people, were a liability in Al's ledger";[30] (2) he heard Piergallini state that he thought the problem with declining sales was attributable to the fact that the sales force was too old;[31] and (3) he heard Piergallini state that Gerber should not hire people over forty.[32] Hinshaw stated that he understood that Piergallini "perceived anyone who had been in the same position for an extended period of time ran the risk of becoming stale and

25. Pls' Opp'n to Gerber's Mtn for SJ, Exh. 29 at 2.

26. Pls' Opp'n to Gerber's Mtn for SJ, Exh. 15, G0001965.

27. Pls' Opp'n to Gerber's Mtn for SJ at 46.

28. Chang Dep. at 227.

29. Pls' Opp'n to Gerber's Mtn for SJ, Exh. 5, 9.

30. Grainger Dep. at 47.

31. Grainger Dep. at 74.

32. Grainger Dep. at 151.

set in their ways." [33] According to Hinshaw, the potential for an age discrimination suit was discussed at a manager's meeting. Kristina Kiley told the managers that termination of the entire sales division would protect Gerber from a suit because "we were not being selective whatsoever, it was entire job function that was being eliminated." [34] Also indicative of discriminatory intent, according to the Plaintiffs, are Piergallini's rejection of Jay Corners' name as a candidate for retention because he was "old Gerber" [35] and the absence of a business plan. Finally, they characterize Gerber's failure to tender a release that complied with the Older Workers Benefit Protection Act because it failed to submit required demographic information as "consciousness of wrongdoing in implementing its age-discriminatory sales force elimination." [36]

■ The Court has carefully and thoroughly reviewed all of the substantial deposition and affidavit testimony, and specifically examined the context of the statements offered by the Plaintiffs. Even when viewed in the light most favorable to them, review of these documents fails to uncover relevant evidence indicating that age was a motivating factor in Gerber's decision to terminate the sales force.

The remarks attributed to Piergallini of "old guys are a liability" and "we have too many old guys" lack a demonstrated temporal nexus to the employment decision and are too weak to raise a reasonable inference of discrimination. The Sixth Circuit has held that "isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Carpenter v. Western Credit Union,* 62 F.3d 143, 145 (6th Cir.1995) (internal quotation marks omitted). The testimony about a "directive," presumably offered to show a hostile corporate culture, is remote and is belied by statistics which reveal that between 1993 and 1997, 23 persons over forty were hired.[37] In addition, the four named plaintiffs testified that they previously had not experienced age discrimination in their employment at Gerber. Indeed, three of the four had been promoted after having reached age forty.[38]

The alleged ageist remarks attributed to Piergallini based on Hinshaw's testimony are best viewed in context:

Q. Did you ever hear Mr. Piergallini say that the problem with declining sales may have been that the sales force had gotten too old?

A. I'm not sure.

Q. When you say you're not sure, what do you think you may remember, and, again, keeping in mind I'm not asking you for precise words, because I don't happen to have been there, but in substance. What is it that you seem to be recalling when you say you're not sure?

A. There were times in discussions in various meetings where one could have probably interpreted a variety of comments, if one was predisposed to do so, to think that or to think that that was an opinion that Al might have or that others might have. [39]

Q. So as I understand what you're saying, while you do not remember the precise words he may have uttered—

A. Yes.

33. Hinshaw Dep. at 27–28.

34. Hinshaw Dep. at 88.

35. Hinshaw Dep. at 122.

36. Pls' Opp'n to Gerber's Mtn for SJ at 42.

37. Houck Aff. ¶ 8.

38. Velkovich was promoted at 45 to grade 06, at 48 to grade 07 and at 50 he was named a National Account Manager. He testified that he was never told to hire or promote anyone based on age. Velkovich Dep. at 104. Butcher was promoted at age 43 to Assistant District Manager, at 45 to District Manager, at 46 to a "super district," and at 50 he was named a National Account Manager. Butcher Dep. 184–85. Johnson was promoted at age 45. Johnson Dep. at 57, 76.

39. Hinshaw Dep. at 30–31.

Q.—you believe that someone might interpret what he said to mean that he was attributing the sales problems to the fact that the salesmen were too old?

A. Or that he was possibly attributing specific activity sales was responsible for to maybe the fact that the people responsible for it didn't have the energy level that others might have; thinking specifically of retail merchandising activity in support of promotion, things like that, that people would be doing in supermarkets and stores. But again, I don't recall any specific—

Q. The precise words?

A. Yes, the precise words or specific reference to age or old, anything like that in those conversations.[40]

His testimony is ambivalent and speculative as to how one might have interpreted Piergallini's remarks. "[P]ersonal beliefs, conjecture and speculation are insufficient to support an inference of ... discrimination." *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir.1986). Notably, Hinshaw did not hear Piergallini utter ageist remarks or indicate that the sales force should be terminated because of the employees' age.

Piergallini's alleged reference to Jay Corners as "old Gerber" similarly fails to create an inference of age discrimination. Hinshaw testified that he believed that the comment meant that Jay Corners "thinks old or in a way that is old fashioned to the marketplace today."[41] There is nothing about the statement itself or its context that suggests that Piergallini was making a veiled reference to the need to terminate older employees. Hinshaw's testimony demonstrates that he thought Piergallini was commenting on Corners' perceived inability to embrace new ideas and new corporate culture. Even if the remarks are construed as a reference to age, any inference of discriminatory intent is rebutted by the fact that twenty-nine employees

who were retained were at least forty years old.[42] In the selection process, Gerber managers considered those employees in grades 04 and higher for possible retention. There is no evidence that the age of the individuals was a consideration in the selection process. Moreover, in interviews of food brokers, no one at Gerber inquired as to the age of the brokers' employees. In addition, Gerber encouraged broker candidates to hire the Gerber employees who would be losing their jobs.[43]

Brown both prepared and presented the "SWOT" analysis. The presentation identified the fact that 40% of the sales force was eligible to retire in the next five years as a threat and was meant to highlight that the company faced a succession problem. The slide was, at best, ambiguous. In any event, Brown left the company six months before the conversion was discussed and was not involved in the decision to terminate the sales force.

As for the documents containing the age of the sales employees, the Plaintiffs offer only their existence. Gerber produced testimony that these documents were generated to assist in identifying potential retirements and thus opportunities to hire and promote minorities and women.[44] There is no evidence that the documents were used to make the challenged employment decision.

Finally, the Plaintiffs argue that this reorganization "came out of the blue" and point to the absence of a business plan. The probative value of the lack of a particular document is attenuated when the context of the strategic corporate change is examined. Gerber's competitors both used food brokers for years. Although Gerber tried a number of methods to enhance the performance of the sales force—new training, a new manager, having Piergallini himself manage the sales force, and

40. Hinshaw Dep. 30–31.

41. Hinshaw Dep. at 122.

42. Van Syckle Aff. ¶ 11.

43. Oscar Smith Aff. ¶ 5, Richard Kester Aff. ¶ 3.

44. Def's Reply Br. at 21.

even offering a Maui vacation as an incentive to meet sales goals—the company did not achieve the results sought. As sales results continued to decline, Piergallini decided to explore the possibility of jettisoning the sale employees and outsourcing the function.

"Often business decisions may force the company to eliminate jobs held by members in a protected category." *Carpenter v. Western Credit Union*, 62 F.3d 143, 145 (6th Cir.1995). "The ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations." *Allen*, 33 F.3d at 677. The record reveals that Gerber made a strategic and fundamental change in the way it does business in order to attain financial goals of reduced expenses and increased sales. Gerber has carried its burden to articulate a legitimate non-discriminatory reason for its actions. The Plaintiffs have not submitted sufficient evidence to show that the articulated reasons were pretextual. No reasonable jury could find from the Plaintiffs' evidence viewed in the light most favorable to them that they were discriminated against on the basis of age.

As a final matter, the Court addresses the status of the severance pay claim now that judgment has been entered as to the termination claim. The severance pay claim previously had been the subject of a motion for summary judgment. The Court denied the motion because the Plaintiffs responded with anecdotal evidence of age bias, to which Gerber did not respond. The Plaintiffs' earlier brief in opposition to Gerber's motion for summary judgment as to that issue offers the same evidence of discriminatory intent as it does here. The two claims are inextricably linked in that they rely on the same evidence.

■ The Court, having a complete record before it, finds that the Plaintiffs have failed to sustain their burden of demonstrating that Gerber's actions in amending the severance plan were motivated by age animus. Although Rule 56 does not expressly authorize it, a district court may raise and grant summary judgment sua sponte as a method of expediting litigation. *Routman v. Automatic Data Processing, Inc.*, 873 F.2d 970, 971 (6th Cir. 1989). FED.R.CIV.P. 56(c) mandates that an adverse party be given ten days notice before summary judgment may be entered. The Sixth Circuit has specifically held that "where a district court is contemplating entering summary judgment against one of the parties, that party is entitled to unequivocal notice of the court's intentions." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir.1995). Accordingly, the Court hereby gives notice of its intent to grant summary judgment as to this remaining claim, and thus dismiss the complaint in its entirety, in ten days. The Court provides this notice in order that the Plaintiffs might respond "with whatever arguments and evidence in the record that [they can] muster." *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir.1984).

An order and judgment consistent with this opinion will be entered.

### ORDER

In accordance with the opinion entered this date,

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment as to the Plaintiffs' disparate treatment termination claims (Docket # 107) is GRANTED.

IT IS FURTHER ORDERED that the Plaintiffs shall have ten days from the date of this order to respond to the court's sua sponte consideration of summary judgment as to the severance plan claim.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss is DENIED as moot (Docket # 87).

IT IS FURTHER ORDERED that JUDGMENT is entered in FAVOR of the

**DEFENDANT** as to the termination claim.