David YASHON, M.D.;  et al.,
Plaintiffs-Appellants,

v.

William E. HUNT, M.D.;  et al.,
Defendants-Appellees.

No. 85–4027.

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1987.

Decided Aug. 3, 1987.

Rehearing and Rehearing En Banc
Denied Sept. 22, 1987.

John C. Elam (argued), Vorys, Sater, Seymour & Pease, Columbus, Ohio, for defendants-appellees.

Rudolph Janata, Porter, Wright, Morris & Arthur, Columbus, Ohio, Charles C. Warner (argued), for plaintiffs-appellants.

Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff David Yashon, M.D., appeals from the order of the district court granting judgment in favor of the defendants and dismissing his action brought under 42 U.S.C. § 1983 to compel his reinstatement to the attending medical staff at the Ohio State University Hospitals in Columbus, Ohio. The district court's order reentered a prior order of the court in which it had found that the defendants afforded plaintiff due process when they rejected his application for reappointment to the attending medical staff. On appeal, plaintiff claims that the Medical Staff Administrative Committee (MSAC) violated principles of administrative res judicata when, in rejecting his application, it considered charges which had been the subject of prior disciplinary proceedings. Plaintiff also argues that the administrative hearing held to consider his application did not comport with procedural due process. Plaintiff asserts six specific procedural due process violations: (1) denial of the right to present witnesses and additional documentary evidence; (2) failure by the MSAC to render a written decision explaining its reasons for rejecting plaintiff's application; (3) lack of written standards governing consideration of plaintiff's application; (4) insufficient written notice of the charges asserted at the hearing; (5) denial of any prehearing

discovery; and (6) denial of the assistance of counsel at the hearing. Plaintiff lastly contends that the MSAC's decision violated his substantive due process rights. For the reasons which follow, we affirm the judgment of the district court.

## I.

This case, which is now before the court for the third time, has a lengthy factual and procedural history which we review here to facilitate a complete understanding of the present appeal. Plaintiff is a duly-licensed neurological surgeon and tenured professor of neurosurgery at the Ohio State University College of Medicine. Pursuant to University Hospitals bylaws, only University faculty members may be appointed to the attending medical staff of University Hospitals. Staff members are appointed for one-year terms and must file an application for reappointment at the end of each term. Pursuant to this procedure, plaintiff was continuously on the attending medical staff from September, 1969 through June 30, 1981. Prior to June, 1981, plaintiff submitted his application for reappointment to Dr. Larry Carey, Chairman of the Department of Surgery, but Dr. Carey did not submit the application to the MSAC for consideration. Consequently, Dr. Carey prevented renewal of plaintiff's staff privileges. This was the most recent of several disciplinary actions or investigations initiated against plaintiff.

The first such action involved a detenurization proceeding based on the allegation that plaintiff engaged in "gross misconduct" by using another faculty member's name in a grant application without that faculty member's permission. Dr. Henry Cramblett, then Dean of the College of Medicine, reversed the charge, observing that plaintiff's conduct was "serious" but did not alone warrant detenurization, especially since plaintiff had subsequently notified the National Institute of Health to withdraw the other faculty member's name from the grant application.

The second action was an attempt to remove plaintiff from the attending medical staff based on charges raised by Dr. Carey in late 1979. An Investigation Committee reviewed the charges and, finding them to be substantial and the cause of obvious disruption, recommended further review. A Grievance Committee subsequently reviewed the charges and issued a report finding no basis for charges of incompetency, no evidence of disruptiveness caused by plaintiff, and unfair harassment by Dr. Carey. The Grievance Committee recommended that plaintiff be restored to his full medical staff privileges. The Grievance Committee's report was reviewed by Dr. Manuel Tzagournis, then Associate Dean of the College of Medicine. When Dr. Tzagournis asked the Grievance Committee to provide him with information explaining the basis for its conclusions, the Grievance Committee declined to do so. Dr. Tzagournis ultimately concluded that plaintiff's past conduct was disruptive and justified a "strong reprimand" but did not warrant curtailment of medical staff privileges. After plaintiff appealed the reprimand to an Executive Committee, Dr. Tzagournis told him that the Committee could confirm, reject, or modify his decision to issue a reprimand. Plaintiff eventually abandoned his appeal.

The third prior action was initiated against plaintiff by Dr. Hunt, then Chief of Neurological Surgery Service. A four-physician committee found that plaintiff engaged in improper conduct when he removed a note written by Dr. Hunt from a patient's chart. The committee did not believe, however, that it was in a position to render a decision as to any illegality of plaintiff's conduct.

The fourth prior action was taken by Dr. Carey, who suspended plaintiff's admission and operating room privileges in May of 1980 because of the "Brumfield" incident. It was alleged that plaintiff failed to properly respond to a resident's request that he come to the hospital to attend to a patient. Plaintiff's privileges were reinstated in July of 1980 pursuant to a decision of the Executive Committee.

Most of the charges involved in these prior disciplinary actions were relied upon by Dr. Carey as grounds for withholding

plaintiff's application for reappointment to the medical staff.

On July 15, 1981, plaintiff filed the instant action against Dr. Carey, the individual members of the MSAC, and other University physicians and officials.[1] Plaintiff sought to compel his reinstatement to the attending medical staff and to enjoin further disciplinary actions against him.

On July 17, 1981, the district court entered a consent order whereby the parties agreed that plaintiff would retain his medical staff privileges until plaintiff's request for injunctive relief was resolved. That same day, the court conferred with counsel for both parties and the parties ultimately agreed to submit plaintiff's application for reappointment to the MSAC for disposition in the same manner as other applications. The district court suggested that Dr. Carey and plaintiff each make a presentation to the MSAC concerning Dr. Carey's reasons for not recommending plaintiff's reappointment to the medical staff, but the court did not suggest or order that the MSAC conduct a "due process" hearing. The court told the parties that no counsel were to be present at the hearing.

Plaintiff subsequently received two written notices of the hearing by letters from Dr. Tzagournis and Dr. Michael Whitcomb, chairman of the MSAC. Accompanying Dr. Whitcomb's letter was a copy of the letter Dr. Carey had written Dr. Tzagournis, listing the specific charges against plaintiff. Plaintiff also spoke with Drs. Tzagournis and Whitcomb by telephone prior to the hearing, and they both explained that they had no knowledge of any witnesses who might be called by Dr. Carey.

The MSAC hearing was held on September 1, 1981, with Dr. Whitcomb making the following opening statement:

Our purpose here this morning is to review Dr. Yashon's application or request for reappointment to the medical staff.... I would like to point out, this is not a court of law. We have no absolute set guidelines in terms of the pro-

ceedings which we are compelled to follow, but our format will be such that I will ask [Dr. Carey] if he chooses and [Dr. Yashon] if he chooses to make some initial comments ... and then for [Dr. Carey] to present specific reasons why he chose not to recommend [Dr. Yashon] to the staff and, as we go through the process, to allow [Dr. Yashon] to respond to those point by point.

Dr. Carey then gave his opening statements, explaining that he was going to present witnesses and evidence showing why plaintiff was an "undesirable member of this hospital staff." Dr. Carey also stressed:

I am in no position now, nor have I been in the past, to evaluate Dr. Yashon's competence as a neurosurgeon ... [b]ut I believe I am in a position and have the responsibility of determining whether or not an individual in the Department of Surgery is competent to practice in this institution. That says little specifically about his competence as a physician. It says something about his propriety as a member of the staff of a teaching hospital.

Plaintiff then made his opening statements, asserting that his work had been most satisfactory until Drs. Carey and Hunt began causing him problems in executing his duties. Plaintiff also raised several objections to the hearing's format, including the lack of notice of Dr. Carey's intention to call witnesses. Plaintiff stated:

I have asked Dr. Whitcomb and Dr. Tzagournis ... [a]re there going to be any witnesses? No witnesses. Now I find out there are going to be witnesses. I don't know what's going on. I will have to face them, but I am not prepared.... I object to that.

Although plaintiff objected to the presentation of witnesses by Dr. Carey, he did not ask for an opportunity to present his own witnesses. Plaintiff also objected that most of the grounds being relied upon by

---

**1.** Plaintiff was originally joined in this action by Dr. Thomas Hawk, but Dr. Hawk is not a party to the present appeal.

Dr. Carey had previously been found meritless by the Grievance Committee, that he had not been given an adequate opportunity to prepare responses to the grounds not previously addressed by the Grievance Committee, and that as a tenured faculty member he could only be removed from the attending medical staff by a detenurization proceeding.

Dr. Carey ultimately presented thirteen witnesses at the hearing. Plaintiff was afforded the opportunity to cross-examine each of them, and members of the MSAC were permitted to ask questions as well. One of the witnesses was Dr. Warren Leimbach, who stated that he received three complaints from residents about plaintiff's coverage of the residency program. Specifically, one first-year resident told him that she had to perform an operation without plaintiff's presence and that the operation had less than satisfactory results. Plaintiff responded to this testimony by asserting that the resident never performed an operation without him being present. Karen Nedelka, who was the head nurse in the neurosurgical intensive care unit, also testified. She related two specific incidents of plaintiff's failure to properly respond to patient treatment situations, one of which involved the care of a Mrs. Brumfield. Dr. Rees Freeman then testified and discussed the circumstances of the Brumfield case in more detail, explaining how plaintiff failed to properly respond to the situation after being called several times. Dr. Freeman was a resident at the time. Dr. Freeman also described plaintiff's failure to respond to the other emergency situation described by Nedelka. Dr. Freeman and several other residents testified that they were uncomfortable with plaintiff's performance as a teacher and his practice of neurosurgery. Finally, various witnesses discussed the prior disciplinary actions initiated against plaintiff and the grounds for those actions.

At the close of the hearing, members of the MSAC voted thirteen to four to reject plaintiff's application for reappointment. The MSAC did not, however, render any written decision detailing its findings.

On September 18, 1981, the defendants moved the district court to vacate the consent order providing for plaintiff's continued membership on the attending medical staff pending the MSAC hearing and disposition. The defendants also requested the court to enter summary judgment in their favor, urging that the MSAC hearing afforded plaintiff all the process he was due.

In an extensive opinion filed on February 26, 1982, the district court vacated its prior consent order and granted the defendants' motion for summary judgment, finding no due process violations arising from the MSAC hearing. The court also rejected plaintiff's claim that principles of administrative res judicata attached to the prior disciplinary proceedings instituted against him and precluded the MSAC from relying on the same charges raised in those prior proceedings.

Plaintiff then pursued his first appeal to this court. On appeal, we declined to reach the merits of plaintiff's procedural due process arguments, holding instead that the district court erred by failing to address the threshold inquiry of whether plaintiff had a protected property or liberty interest in his position on the attending medical staff. *Yashon v. Hunt*, 696 F.2d 468 (6th Cir.1983). Noting that the requirements of procedural due process apply only to constitutionally protected interests, this court concluded that a remand was necessary to allow the district court to make a determination on the protected interest question. *Id.* at 470.

On remand, plaintiff requested discovery because the protected interest issue had not been addressed by either party. The district court denied this request, determining that the issue could be resolved on the basis of the original record. The court ultimately found that plaintiff had no protected property or liberty interest in his position on the attending medical staff, and again granted summary judgment in favor of the defendants.

Plaintiff again brought an appeal to this court and we again vacated the judgment of the district court and remanded for further consideration. *Yashon v. Gregory,*

737 F.2d 547 (6th Cir.1984). We stated two grounds for the decision to remand: (1) the district court improperly entered summary judgment *sua sponte* without giving plaintiff appropriate notice or the opportunity to respond, *id.* at 552–53; and (2) the district court erred in denying plaintiff's request for discovery because there were disputed issues of material fact which were subject to discovery. *Id.* at 553–56.

On remand for the second time, the parties stipulated that plaintiff had a constitutionally protected property interest in his membership on the attending medical staff. Accordingly, the district court issued an opinion and order on November 6, 1985, finding that plaintiff had a protected property interest in continued staff privileges. Since plaintiff had such a protected interest, the court observed that plaintiff was "entitled to a due process hearing in connection with the decision on his annual reappointment to the medical staff."

On November 18, 1985, the district court resolved the due process issues. The court decided, and counsel agreed, that it should reenter its original decision denying plaintiff's claims. In accordance with that prior decision, the court again entered judgment in favor of the defendants, from which plaintiff now appeals. Accordingly, the instant appeal focuses on the district court's 1982 decision upholding the propriety of the MSAC hearing and the MSAC's decision to reject plaintiff's application for reappointment to the attending medical staff.

## II.

■ Plaintiff first argues that principles of administrative res judicata precluded the MSAC from considering charges which had already been raised in prior disciplinary proceedings. As the district court acknowledged in its decision, most of the charges alleged by Dr. Carey in the proceedings before the MSAC had also been asserted in the previous disciplinary actions initiated against plaintiff. The four prior separate proceedings taken against plaintiff resulted in: (1) a "strong reprimand" but no removal from the medical staff; (2)

a finding of improper conduct; (3) dismissal of a detenurization complaint; and (4) reinstatement of operating privileges which had been suspended. Plaintiff contends that principles of res judicata attached to these prior proceedings and therefore barred reconsideration of the charges on which the proceedings were based. Plaintiff primarily relies on *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), which stated that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata....*" Although *Utah Construction* and other cases cited by plaintiff addressed the preclusive effect of administrative proceedings on subsequent judicial actions, and the instant case presents the slightly different question of whether subsequent administrative proceedings are barred by prior administrative proceedings, plaintiff nevertheless urges that the principles are equally applicable here because each of the previous administrative actions fully addressed the merits of the charges and fully exonerated him of those charges.

We are unpersuaded that the MSAC was precluded from considering the charges which had been reviewed in the other disciplinary proceedings. Determinations made in administrative proceedings will generally be given preclusive effect only if the parties had a full and fair opportunity to litigate the matters involved, *see Utah Construction*, 384 U.S. at 422, 86 S.Ct. at 1560; *City of Pompano Beach v. Federal Aviation Auth.*, 774 F.2d 1529, 1538–39 n. 10 (11th Cir.1985), and if the proceedings culminated in a definitive resolution of the matters. Neither of these requirements are satisfied in this case. None of the former proceedings reached a point whereby the parties were given a full opportunity to litigate the charges brought against plaintiff. In each instance, the administrative processes stopped short of the type of formal hearing which was held before the MSAC, and to which principles of res judi-

cata could attach. Furthermore, several of the former proceedings did not definitively resolve the charges asserted against plaintiff in that he was not completely exonerated of improper conduct. Accordingly, we agree with the district court that the previous administrative proceedings should not be given preclusive res judicata effect and that the MSAC therefore was not barred from considering the charges raised in those proceedings.

### III.

Plaintiff asserts that six specific procedural due process violations arose out of the MSAC hearing. Our review of these due process arguments is governed by several general principles. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). However, the overall concept of due process of law is a flexible one, and therefore the type of procedural protections required in a particular situation depends largely upon the circumstances of that situation. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In determining when a particular procedure is required, three factors should generally be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335, 96 S.Ct. at 903.

It is obvious in the instant case that plaintiff and University Hospitals each had important interests at stake in the MSAC hearing. Plaintiff had a significant interest in being reappointed to the attending medical staff in order to maintain his professional reputation and his income. On the other hand, it was important to University Hospitals to retain only competent and highly compatible physicians on its medical staff. Hospitals have an important "interest in quickly dealing with incompetence and debilitating personal frictions," in order to ensure "[e]ffective performance by physicians on the staff ... whose tasks require a high degree of cooperation, concentration, creativity, and the constant exercise of professional judgment." *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 368 (9th Cir.1976).

We must weigh these valid interests of each of the parties in considering the sufficiency of the process afforded plaintiff at the MSAC hearing. In doing so, however, we must also bear in mind that the scope of our review is fairly narrow. A federal court's review of disciplinary actions taken against a physician by a hospital is generally limited to determining whether the procedures used violated any federal rights and whether the administrative body was presented with substantial evidence to support its ultimate action. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir.1985); *Woodbury v. McKinnon*, 447 F.2d 839, 846 (5th Cir.1971). It is simply not our function to review the merits of the charges against a physician, *Kona Hospital*, 754 F.2d at 1425, and we will generally afford great deference to "the decision of a hospital's governing body concerning the granting of hospital privileges." *Laje v. R.E. Thomason Gen. Hosp.*, 564 F.2d 1159, 1162 (5th Cir.1977), *cert. denied*, 437 U.S. 905, 98 S.Ct. 3091, 57 L.Ed.2d 1134 (1978). Mindful of these general principles, we turn to the specific procedural due process arguments raised by plaintiff.[2]

---

**2.** Of course, the requirements of procedural due process apply only where protected property or liberty interests are deprived. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Pursuant to the parties' stipulation, the district court below entered an order finding that plaintiff had a protected property interest in his membership on the attending medical staff. The defendants have not appealed that finding. Accordingly, it is not

## A. Right to Call Witnesses

■ Plaintiff first argues that the defendants violated his procedural due process rights by denying him the right to present witnesses and additional documentary evidence on his own behalf. Plaintiff contends that there is a well-established constitutional right to call witnesses in proceedings before an administrative factfinder. For this proposition, plaintiff relies on two Sixth Circuit cases which did not involve the issue of a physician's medical staff privileges, *Carter v. Western Reserve Psychiatric Habilitation Center*, 767 F.2d 270, 273 (6th Cir.1985) (discharged civil servant permitted to call witnesses at post-termination *Loudermill* hearing *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)), and *NLRB v. Prettyman*, 117 F.2d 786, 790 (6th Cir.1941) (in hearing under National Labor Relations Act, employer may produce evidence and witnesses to refute unfair labor practice charges).

We have found no decisions holding that a physician is constitutionally entitled to call witnesses in a proceeding to determine whether the physician should be granted staff privileges. Some cases have approved proceedings where no witnesses were called, *see, e.g., Woodbury*, 447 F.2d at 844, while other cases have approved procedures allowing a physician to call witnesses, *see, e.g., Duffield v. Charleston Area Medical Center, Inc.*, 503 F.2d 512, 519 (4th Cir.1974). Even in the latter instance, however, it was not held that the ability to call witnesses was constitutionally mandated. Still other cases have simply held that a physician has the right to rebut the evidence against him and cross-examine adverse witnesses. *See, e.g., Christhilf v. Annapolis Emergency Hosp. Ass'n, Inc.*, 496 F.2d 174, 178–79 (4th Cir.1974).

We conclude that no procedural due process violation occurred when the MSAC rendered its decision without hearing from any witnesses testifying on plaintiff's behalf. Several factors are influential in reaching this conclusion.

First, plaintiff mischaracterizes the situation when he claims that the defendants refused to allow him the right to call witnesses, since he never requested permission to call his own witnesses. At the outset of the MSAC hearing, plaintiff objected to the presentation of witnesses by Dr. Carey but he did not ask to present his own witnesses nor did he seek a continuance for the purpose of obtaining witnesses. Instead, he agreed to proceed with the hearing and respond to the witnesses called by Dr. Carey. Plaintiff therefore did not claim before the MSAC that he was entitled to call witnesses on his own behalf. Accordingly, there was no outright refusal by the defendants to allow plaintiff to call his own witnesses. For us to find a procedural due process violation under these circumstances, we would have to hold that plaintiff was constitutionally entitled as a matter of law to be given the opportunity to call his own witnesses. We believe that adoption of such a constitutional requirement is unwarranted, particularly since due process of law is a flexible concept which requires different procedural protections depending on the situation. *Morrissey v. Brewer*, 408 U.S. at 481, 92 S.Ct. at 2600.

Second, plaintiff has never shown what additional evidence or testimony he could have presented at the hearing had he been given the opportunity to do so. The district court below observed that plaintiff had not, either at the hearing or in his filings with the district court, "proffered the name of any witness he would have called." In the absence of any such proffer, we have no basis for concluding that plaintiff was prejudiced by not having any witnesses testify on his behalf.

Third, we are satisfied that the essential requirement of procedural due process was satisfied here; that is, plaintiff was afforded a meaningful opportunity to be heard. Throughout the hearing, plaintiff had the means to rebut the evidence presented

disputed that the requirements of procedural due process apply with respect to the MSAC hearing.

against him, as he was permitted to thoroughly cross-examine the witnesses called by Dr. Carey and to make statements on his own behalf in response to the witnesses' testimony.

Finally, with respect to plaintiff's complaint that he was denied the opportunity to present documentary evidence, the record establishes that he in fact submitted documents at the hearing and that he read extensively from those documents during the hearing. Furthermore, plaintiff did not proffer any additional relevant evidence to the district court which he was prevented from presenting at the hearing. Accordingly, plaintiff again has not shown how he was prejudiced.

In sum, we are unpersuaded that the interests of the parties in this case, as analyzed under *Mathews v. Eldridge,* are such that plaintiff was entitled to the additional procedural due process safeguards of presenting witnesses or additional evidence on his own behalf.

## B. Lack of Written Decision

██ Plaintiff's second procedural due process claim focuses on the lack of any formal, written decision by the MSAC. Plaintiff contends that the MSAC's failure to render a written decision setting forth its findings and reasoning violates due process because it prevents effective review of the decision and the grounds supporting it. Plaintiff refers the court to the due process concerns addressed by the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff,* the Court held that in prison disciplinary decisions "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* at 564, 94 S.Ct. at 2979 (quoting *Morrissey v. Brewer,* 408 U.S. at 489, 92 S.Ct. at 2604). Requiring written records of disciplinary proceedings helps to "insure that administrators, faced with possible scrutiny ... will act fairly." *Id.* 418 U.S. at 565, 94 S.Ct. at 2979. Without such written records, inmates would be at a disadvantage when attempting to propound their own cause or defend themselves. *Id.*

This Circuit has also observed that the failure to issue a written decision in a prison disciplinary proceeding inhibits effective appellate review of that decision. *Franklin v. Aycock,* 795 F.2d 1253, 1256 (6th Cir.1986).

Plaintiff cites to no case authority for the proposition that an informal hospital decision-making body must issue a written decision explaining its findings and rationale for denying a physician attending staff privileges, and we decline to adopt such a rule under these circumstances. The primary concern of the requirement of a written decision is to provide a sufficient record for a reviewing body to verify that the decision was founded on proper grounds. In the instant case, it was the district court's duty to determine whether the MSAC based its decision "only [on] those matters which are reasonably related to the operation of the hospital." *Sosa v. Board of Managers of the Val Verde Memorial Hosp.,* 437 F.2d 173, 176–77 (5th Cir.1971). The district court observed that although its inquiry would have been easier had there been a written decision, the absence of a written decision did not preclude effective review because there was a complete transcript of the MSAC proceedings. The court was therefore able to thoroughly examine the written record and conclude as follows:

> [I]n view of the Court's extensive review of the administrative record and its determination that there was sufficient evidence to support many of Dr. Carey's charges, a number of which were not even challenged, the Court cannot find that Dr. Yashon was unfairly prejudiced ... by ... the committee's failure to render a written decision as to which charges were meritorious.

Our review of the hearing transcript likewise reveals that the MSAC relied on appropriate considerations in rendering its decision. We accordingly agree with the district court's analysis and hold that the MSAC's failure to issue a written decision did not violate plaintiff's due process rights.

## C. Absence of Governing Standards

Plaintiff next argues that procedural due process required the adoption of express standards governing the denial of an application for reappointment to the medical staff. No such established standards existed when the MSAC rendered its decision. According to plaintiff, this absence of governing standards violated his due process rights because it gave the MSAC unfettered and arbitrary discretion to deny his application for any reason.

We disagree. The pertinent question is whether the evidence relied on by the MSAC was reasonably related to the operation of a hospital and its attending medical staff. So long as it is based on such proper grounds, the decision to deny a physician's application for reappointment is within the discretion of the MSAC. As we held above, we are satisfied that the MSAC based its decision on appropriate considerations. Accordingly, the lack of established standards does not render the MSAC's decision arbitrary and therefore violative of due process. We are not persuaded otherwise by the cases relied upon by plaintiff since they involve decisions of government agencies and the settled requirement that they be made within established guidelines. *See, e.g., White v. Roughton*, 530 F.2d 750, 754 (7th Cir.1976) (administrator of welfare program must establish written standards governing eligibility for welfare assistance).

## D. Adequacy of Written Notice

Plaintiff also argues that he received inadequate notice of the charges which would be brought against him at the hearing. He claims that the notice of charges contained in Dr. Carey's letter to Dr. Tzagournis, a copy of which plaintiff received from Dr. Whitcomb, was not sufficiently specific to enable him to prepare his defense. In support of his argument, plaintiff relies on a district court decision which held that a physician who had his hospital staff privileges terminated was entitled to "a detailed, written statement of the grounds upon which non-renewal of his staff membership was being considered,

specifying the cases in which his professional performance was challenged, and stating in reasonable fullness the nature of the criticism in each case." *Suckle v. Madison Gen. Hosp.*, 362 F.Supp. 1196, 1211 (W.D.Wis.1973), *aff'd on other grounds*, 499 F.2d 1364 (7th Cir.1974).

This argument is without merit. Notice in this type of informal setting need only be specific enough to enable the individual to respond to the charges raised against him; it need not rise to the level of specificity required of a criminal indictment. *See Woodbury*, 447 F.2d at 844. The written notice of charges contained in Dr. Carey's letter gave plaintiff sufficient notice under this standard. Furthermore, plaintiff has acknowledged, and the district court found, that he was already familiar with all but one of the charges asserted by Dr. Carey, since they were the subject of prior proceedings. Written notice of specific charges is not required where past events or discussion have provided a physician with notice of the charges against him. *Ong v. Tovey*, 552 F.2d 305, 308 (9th Cir. 1977). Accordingly, we find no procedural due process violation arising from the notice afforded plaintiff.

## E. Entitlement to Pre-Hearing Discovery

Plaintiff argues that he was entitled to pre-hearing discovery, which he was denied in violation of his procedural due process rights. While some courts have permitted limited forms of discovery in similar situations, *see Christhilf*, 496 F.2d at 180 (physician or his counsel given opportunity on remand to "inspect or copy all documents in the hospital's possession bearing on each charge"), there is no constitutional right to pre-hearing discovery under these circumstances. The primary concern is to ensure that plaintiff had an adequate opportunity to prepare or develop his defense to the charges leveled against him. In light of plaintiff's familiarity with the charges, the ongoing nature of the controversy between he and the defendants, and plaintiff's responsiveness to the matters raised at the hearing, we are satisfied that this concern was met. *See Klinge v. Lu-*

*theran Charities Ass'n,* 523 F.2d 56, 63 (8th Cir.1975).

### F. Assistance of Counsel

■ The last specific procedural due process argument asserted by plaintiff is that he had the right to be represented by counsel at the MSAC hearing. Although plaintiff acknowledges that there is no constitutional right to the presence of counsel at all administrative hearings, he contends that the absence of counsel in this case increased the "risk of an erroneous deprivation of [his] interest." *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903. Plaintiff therefore concludes that the assistance of counsel was required to meet notions of fairness. He also again relies on the statements made by this court in *Carter v. Western Reserve Psychiatric Habilitation Center,* 767 F.2d 270, 273 (6th Cir. 1985) (in post-termination *Loudermill* type hearings, discharged civil servants have the right "to have the assistance of counsel"). Plaintiff urges this court to extend the right to counsel to proceedings held to evaluate a physician's application for membership on a hospital's attending medical staff.

This we decline to do. This Circuit has already held that an individual is not entitled to the assistance of counsel in informal university administrative proceedings. *See Crook v. Baker,* 813 F.2d 88, 99 (6th Cir. 1987); *Frumkin v. Kent State Univ.,* 626 F.2d 19, 21 (6th Cir.1980). Furthermore, the parties here had originally agreed in their proceedings before the district court that no counsel would be present at the hearing. Finally, we believe the district court properly concluded that plaintiff was not prejudiced by the absence of counsel. The district court reasoned:

> Where, as here, the record shows that Dr. Yashon fully participated at the hearing, that he was conversant with all of the charges made by Dr. Carey, and that he was competent at cross-examination, the Court concludes that it is unlikely that the presence and participation of counsel on Dr. Yashon's behalf would have provided a procedure less likely to have resulted in erroneous findings of fact.

This analysis is persuasive and illustrates that the lack of counsel under these circumstances did not increase the "risk of an erroneous deprivation of [plaintiff's] interest." *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. Thus, due process did not require that plaintiff be assisted or represented by counsel at the hearing. *Cf. Goldberg v. Kelly,* 397 U.S. 254, 270–71, 90 S.Ct. 1011, 1021–22, 25 L.Ed.2d 287 (1970) (welfare recipients entitled to a hearing before termination of their benefits and, if they have counsel, are entitled to have counsel cross-examine witnesses at the hearing).

### G. Other Procedural Due Process Concerns

Apart from the specific procedures which plaintiff believes were essential to comply with due process, there are other general aspects of the MSAC hearing which plaintiff contends rendered the hearing fundamentally unfair and therefore violative of due process. Plaintiff complains that the format of the hearing exceeded the district court's suggestion to the parties that Dr. Carey and plaintiff each make oral presentations of their cases. In plaintiff's opinion, the MSAC ignored this "directive" of the district court by permitting Dr. Carey to call thirteen witnesses. Plaintiff also raises a form of conflict of interest or unfair bias argument, arguing that Dr. Carey and the members of the MSAC had mutual interests even though they had assumed the separate roles of prosecutor and neutral arbiter, respectively. As an indicia of their mutual interests, plaintiff cites to the fact that the same legal counsel represents Dr. Carey and the MSAC members in this and other actions. Plaintiff believes that the close relationship between Dr. Carey and the MSAC members tainted the propriety of the MSAC hearing under the general principle that the roles of judge and prosecutor should not be intertwined. *See In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

■ These arguments, and other related arguments raised by plaintiff, do not convince us that the proceedings were fundamentally unfair. The defendants did not

improperly exceed any "directive" of the district court because the court issued no order or mandate; it merely made general format suggestions to the parties which were essentially followed. There was also no improper mixing of the roles of prosecutor and judge. Dr. Carey did not participate either in the deliberations or in the ultimate decision of the MSAC. Thus, the principles of *Murchison* were not violated. *Cf. Hoberman v. Lock Haven Hosp.*, 377 F.Supp. 1178, 1186 (M.D.Pa.1974) (due process violated where physician who filed charges and presented evidence against another physician also participated in the deliberations and decision on the charges). A person is entitled, as a general principle of due process, to have his cause heard before an impartial and neutral tribunal. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980). Since we are satisfied that the defendants took appropriate steps to ensure "the appearance and reality of fairness at the MSAC hearing," *id.*, we conclude that this general principle was not violated. As succinctly stated by the district court, "on this record, the court cannot conclude that the procedural irregularities raised by Dr. Yashon rendered the hearing and its accompanying procedural protections fundamentally unfair."

### IV.

■ Plaintiff lastly argues that the MSAC's decision to reject his application for reappointment to the medical staff violated substantive due process. To withstand substantive due process scrutiny, a hospital's decision to deny staff privileges "must be untainted by irrelevant considerations and supported by substantial evidence to free it from arbitrariness, capriciousness, or unreasonableness." *Woodbury*, 447 F.2d at 842. Although plaintiff argues that the issue of his disruptiveness or unprofessional behavior was not reasonably related to the operation of University Hospitals, we have already recognized that a physician's unprofessional conduct, incompatibility and lack of cooperation on a hospital staff are appropriate considerations for denying staff privileges. *Stretten*, 537

F.2d at 368. Because the evidence presented to the MSAC tended to show that plaintiff was disruptive, that he was not compatible with other staff members, and that he had engaged in certain unprofessional improprieties, we are satisfied that there is substantial relevant evidence supporting the MSAC's decision to deny plaintiff's application for reappointment to the medical staff. We therefore hold that plaintiff's substantive due process rights were not violated.

Accordingly, for the reasons set forth above, the judgment of the district court is AFFIRMED.