889 F.2d 1086
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John CRABTREE, Plaintiff-Appellant,
v.
The CITY OF COOKEVILLE, Tennessee, a Municipal corporation
organized under the laws of the State of Tennessee,
operating as Cookeville General Hospital, Gary Samples,
Steve Goryl, Glenn Hall, John Paul Limbacher, II, Daniel F.
Coonce, Walter Fitzpatrick, Defendants-Appellees.
 No. 89-5078.
 United States Court of Appeals, Sixth Circuit.
 Nov. 21, 1989.
 
 Before BOYCE F. MARTIN, Jr., and BOGGS, Circuit Judges, and LAWRENCE P. ZATKOFF, District Judge.*
 PER CURIAM.
 
 
 1
 Dr. John Crabtree appeals a directed verdict against him in his Section 1983 action. Dr. Crabtree claims that defendants violated his procedural due process rights by summarily suspending his clinical privileges at Cookeville, Tennessee General Hospital. He seeks to have the case remanded with instructions to enter a directed verdict on his behalf and to hold a hearing to determine damages.
 
 
 2
 Dr. Crabtree is a general surgeon in Cookeville, Tennessee who had clinical privileges only at Cookeville General Hospital. Cookeville General Hospital is owned and operated by the City of Cookeville.
 
 
 3
 The summary suspension arises out of an altercation that occurred in the surgical suite of the hospital on April 6, 1987. Dr. Crabtree learned that Dee Welch, a surgical nurse, had spread rumors that he had written a letter critical of the hospital's treatment of the nursing staff. Dr. Crabtree confronted her and a loud argument ensued. Although no hostile physical contact occurred, staff and pre-surgery patients were upset by the commotion.
 
 
 4
 This incident was investigated on the same day by Dr. Samples, a member of the hospital Executive Committee. Samples contacted everyone involved except Dr. Crabtree and decided to give Dr. Crabtree a summary suspension. Dr. Samples made no attempt to contact Dr. Crabtree until after he had decided upon summary suspension. The summary suspension was to last until the Executive Committee could convene for a hearing, which was scheduled for April 7.
 
 
 5
 The Executive Committee hearing was delayed until April 16, at the request of Dr. Crabtree. When the hearing was held, the Executive Committee framed the issue before it as requiring it to "decide whether [to] recommend modification, continuance or termination of the terms of the summary suspension." Dr. Crabtree refused to participate because he could not challenge the suspension itself and because his lawyer was not allowed to participate. Of the four members of the Executive Committee, two were Samples, who acted as prosecutor, and Dr. Goryl, who acted as complainant. In a written decision, the Executive Committee terminated Dr. Crabtree's suspension, issued a formal letter of reprimand and instituted a one year probation.
 
 
 6
 By the time of the Executive Committee hearing, Dr. Crabtree had already filed this lawsuit. While he pursued his court action, Dr. Crabtree also continued with administrative appeals within the hospital, ultimately losing. At trial, the district court entered a directed verdict in regard to Dr. Crabtree's procedural due process claim after the close of his case in chief. The jury returned a verdict for defendants on all other claims.
 
 
 7
 The parties agree that Dr. Crabtree's clinical privileges fall within the protection of the Constitution as a property right. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Dr. Crabtree argues that his property right entitled him to some minimal advance notice, at least by a telephone call, of the allegations against him, and to an opportunity to respond to them before he was suspended. If he was not entitled to advance notice, Dr. Crabtree argues that the post-suspension hearing violated his procedural due process rights because he was allowed only to seek to have the summary suspension terminated, not to contest the propriety of imposing the summary suspension in the first place.
 
 
 8
 A constitutional analysis of what process is due is unnecessary in cases where any deprivation of property is de minimis. Goss v. Lopez, 419 U.S. 565, 576 (1975); Carter v. Western Reserve Psychiatric Habilitation, 767 F.2d 270, 272 n. 1 (6th Cir.1985). In Carter, a public employee was suspended without pay for two days in the course of routine discipline. The Court held that he had been deprived of property "in theory," but that the deprivation was de minimis and not deserving of due process consideration. Id.
 
 
 9
 In the current case, we find that the one day summary suspension of Dr. Crabtree by the hospital was a de minimis deprivation of property. First, Dr. Crabtree was suspended for one day instead of the two in Carter. Second, the summary suspension was not disciplinary as the action was in Carter. The letter from Dr. Samples informing Dr. Crabtree of the suspension states:
 
 
 10
 [W]e hereby summarily suspend your clinical privileges which will remain suspended until convention of the Executive Committee tomorrow, April 7, 1987 at 1:00 P.M. The reason for suspension is your alleged attack upon Ms. Dee Welch in the Surgery Department this morning. Following consultation with the Executive Committee and Mr. Walter Fitzpatrick, we feel that such actions are potentially harmful to patients, hospital employees, and the Hospital itself.
 
 
 11
 This letter contains no mention of punishment and refers to the action that led to the suspension as "alleged." The summary suspension served merely to preserve the status quo until a hearing of the Executive Committee could convene the next day.
 
 
 12
 At oral argument, Dr. Crabtree contended that the suspension deprived him of property not only because of the length of the suspension, but because of the impact that he alleged it would have on his ability to find other jobs and on his medical malpractice insurance premiums. There is no evidence in the record of what impact, if any, a non-disciplinary summary suspension will have on these concerns.
 
 
 13
 Dr. Crabtree alleges that Dr. Samples in particular and the Executive Committee in general were biased against him. We express no opinion on Dr. Samples' bias or on the propriety of his decision to summarily suspend Dr. Crabtree. Because any deprivation of property is de minimis, we do not reach that question. We do note that the defendants did follow the hospital staff by-laws in suspending Dr. Crabtree. Article VII, Part 2.a. of the by-laws allows Dr. Samples, as chief of staff, to summarily suspend a doctor from clinical privileges, effective immediately, whenever he finds, after consultation with the Executive Committee, that such "action must be taken immediately in the best interest of the patient care in the hospital." The record shows that the defendants complied with the terms of the by-laws and there is no allegation that they failed to do so.
 
 
 14
 If Dr. Crabtree had been suspended for two weeks or if the suspension were punitive, he probably would be entitled to some sort of notice and opportunity to respond before the deprivation unless an emergency existed requiring immediate suspension. But because any deprivation of property was de minimis, we need not go into an extended analysis of what process would be required if the deprivation had been greater.
 
 
 15
 When the hearing with the Executive Committee finally took place and Dr. Crabtree received his probation and reprimand, his constitutionally protected interest may have been infringed. Dr. Crabtree argues that this infringement violated his due process rights in two ways. First, the Executive Committee included Dr. Samples, who acted as the prosecutor and had initially disciplined him, and Dr. Goryl, who acted as complainant. Dr. Crabtree argues that such an intertwining of judge and prosecution precluded a neutral tribunal as required by due process. See Yashon v. Hunt, 825 F.2d 1016, 1026-27 (6th Cir.1987).
 
 
 16
 We do not agree that Dr. Crabtree was denied due process. Due process does not require that administrative officials who conduct an investigation never serve on an initial hearing panel. See Klinge v. Lutheran Charities Assoc., 523 F.2d 56, 63 (8th Cir.1975). Here, any harm from bias was expunged by the extensive administrative review of the Executive Committee's decision that Dr. Crabtree received. The first step of this review was the Ad Hoc Hearing Committee, which allowed an essentially de novo review with rights to present and cross-examine witnesses, to present written evidence and to rebut evidence. Defendants state that no member of the original review would serve on the Ad Hoc Hearing Committee. After losing this appeal, Dr. Crabtree appealed to the Appellate Review Committee and then to the Joint Conference Committee. The original recommendation of the Executive Committee ultimately was approved. When this record is reviewed as a whole, it cannot be said that Dr. Crabtree was denied due process.
 
 
 17
 Second, Dr. Crabtree argues that defendants denied his legal counsel an opportunity to participate in the hearing even though only factual and legal, not medical, issues were considered. Dr. Crabtree argues that he has an especially strong need for an attorney under the Mathews v. Eldridge test. As a surgeon, his livelihood depends on access to the operating facilities of a hospital even more than most doctors. He also emphasizes the need to develop an accurate and complete record at the post-deprivation hearing. Dr. Crabtree seeks to distinguish our previous decision of Crook v. Baker, 813 F.2d 88 (6th Cir.1987) as concerning a doctor who was an expert in the subject matter at issue and able to represent himself.
 
 
 18
 We disagree. Although Dr. Crabtree's attorney was not allowed to speak at the Executive Committee hearing, he was allowed to be present and he helped prepare for the hearing beforehand. In addition, he was allowed to help Dr. Crabtree prepare written documents for the administrative appeals. Dr. Crabtree fails to distinguish the previous decision of this court in Yashon v. Hunt, 825 F.2d 1016 (6th Cir.1987). Yashon also concerned a doctor's position on a hospital staff--in this case a neurological surgeon who was not reappointed to his position. 825 F.2d at 1018. The Court held that Dr. Yashon did not have a right to an attorney at his reappointment hearing. Id. at 1026. Instead of involving medical issues as Dr. Crabtree argues, Yashon actually involved issues that were more legal than in the present case, such as whether prior disciplinary charges could be part of the current decision. In addition, Dr. Yashon sought to reverse the loss of his position on the staff of the hospital, whereas Dr. Crabtree faces only a letter of reprimand and a probation. We affirm the district court's holding that Dr. Crabtree's due process rights were not violated by his attorney's inability to participate at the Executive Committee hearing.
 
 
 19
 For the foregoing reasons, we affirm the district court's grant of summary judgment.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation