*277 ORDER REMANDING CASES TO INTERNAL REVIEW BOARD
KATHARINE ENGLISH, Chief Judge.
INTRODUCTION:
In each of these three cases, the Petitioners appealed from final Internal Review Board (IRB) decisions upholding the decision to terminate Petitioners’ employment with the Tribe. Although these cases have been briefed and argued separately, and although the IRB proceedings regard *278 ing each Petitioner were conducted separately, the cases involve common issues and arguments. The Court concludes that a single common discussion of the three cases may help to explain the Court’s decision with respect to each case. For that reason, the cases are consolidated solely for the purposes of this opinion.
ISSUES PRESENTED:
The issues raised in each case are similar, if not identical. Each Petitioner claims a denial of due process, based on allegedly inadequate notice given in advance of the IRB hearing. Each Petitioner also contends that due process requires that a discharged employee be permitted to be represented by counsel at an IRB hearing. Each Petitioner argues that the IRB’s decision was not supported by substantial evidence. In their reply briefs — apparently in response to points made in the Tribe’s briefs — Petitioners add claims that the IRB panels in their cases did not amount to impartial panels of decision makers and that the IRB panels conducted extensive fact finding in each case.
The Tribe disagrees with all of Petitioners’ claims. The Tribe asserts that the pre-hearing notice given to Petitioners was adequate, and that they themselves were responsible for raising many of the issues they now claim came as surprises to them. The Tribe admits that it does not permit a Petitioner to be represented by an attorney at an IRB hearing, but argues that such a policy is constitutionally permissible. The Tribe also disagrees with Petitioners’ substantial evidence claims.[1]
The pivotal issue is whether Petitioners received constitutionally adequate notice before the IRB hearings. For the reasons that follow, the Court concludes that the notice Petitioners received was not constitutionally sufficient, and that Petitioners were, therefore, deprived of due process. In addition, the Court concludes that the Tribe cannot constitutionally prohibit Petitioners from retaining counsel to represent them at the IRB hearings. The Court therefore remands these cases to the IRB for further proceedings not inconsistent with this opinion.
BACKGROUND:
Each of the three Petitioners, Polly Lewis, Diana Ramey, and Richard Synow-ski, was employed as a mental health counselor at the Tribe’s Health and Wellness Center. Ms. Lewis had worked for Tribe since April 1997, as had Mr. Synowski. Ms. Ramey had been employed by the Tribe since sometime in 1996. In addition, each of the three had prior experience as a mental health counselor and each had earned a master’s degree in some field. However, none of them was licensed as a professional counselor.
On April 5, 2000, as part of an overall policy to ensure that the Tribal Health Center would meet the applicable standards for accreditation, the Health Authority adopted a policy requiring that all health care professionals, including counselors, must be licensed. Because none of the Petitioners was licensed, on April 17, 2000, each Petitioner’s employment with the Tribe was terminated. Each termination letter was similar, and informed the Petitioner who received it that the Center had adopted a policy requiring that each mental health counselor employed at the *279 Center was required to have a current, valid unrestricted license as a professional counselor, and that, because the petitioner did not have such a license, the petitioner’s employment with the Tribe was terminated as of April BO, 2000.
After unsuccessfully attempting to appeal the termination decision directly to this Court, the three petitioners filed a grievance request form, signed by all of them. That grievance alleged that each of them was fired “without prior warning or notice.” They also contended that they “were wrongfully discharged.” They suggested that the policy requiring professional licensing might have been implemented gradually “over time.” They also referred to a meeting held in August 1999, in the office of the executive director of the Health Authority, at which they claimed they were told by Dr. Thomas L. Austin that they should wait to present or proceed with any plan to obtain their licenses until after the Health Authority was appointed. They indicated that they had presented some plan to obtain their licenses at an earlier point, “but were never given the go ahead to proceed beyond th[at] point [.]” The Petitioners’ grievance form raised other points as well.
Ultimately, each Petitioner was afforded an IRB hearing,[2] and in each instance, following the healing the IRB upheld the termination decision. Each Petitioner then sought judicial review in this Court.
STANDARD OF REVIEW:
The Court’s standard of review is limited. The Court reviews the IRB’s decision based on the underlying record. The Court may reverse a final employment decision only if the employee’s substantial rights were denied because the decision: (1) violates applicable provisions of the Tribal Constitution, (2) violates applicable provisions of Tribal or federal law, (3) is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with applicable law, or (4) is not supported by substantial evidence in the record taken as a whole. The Court is not to second guess any matter committed to the Tribe’s discretion and is to respect the Tribe’s right to adopt and enforce employment policy. Employment Action Review Ordinance § 255.5(d)(8).
ANALYSIS:
1. In each case, the Court must reverse and remand.
As explained below, after careful consideration the Court concludes that, in each of these three cases, the IRB’s decision must be reversed and the matter remanded for further proceedings not inconsistent with this opinion. In each instance, the Court determines that the Petitioner was not given adequate pre-hearing notice of the issues that were to be raised before the IRB. Each case began as a relatively straightforward one, in which the only issue was whether the Petitioner had the required professional license — a factual issue on which the parties do not disagree. However, by the end of each IRB hearing, that simple and straightforward issue had been transformed into a hydra of ever multiplying issues and complaints. Even if — as the Tribe suggests — the Petitioners were responsible for interjecting some of the new issues into their cases, the Tribe was responsible for interjecting even more issues and complaints. Thus, these hearings, which might have been limited to a single issue, or to only a few issues, were transformed into extensive proceedings dealing with a panoply of complaints. Each Petitioner did not have fair pre-hearing *280 notice regarding at least some of those complaints.
That conclusion is sufficient to require that the decision in each of these cases must be reversed and remanded. For that reason — with one exception — the Court need not consider the other issues raised. The exception is the issue raised regarding the prohibition on representation by counsel at IRB hearings. Because that issue appears to be apt to arise again on remand, the Court exercises its discretion to decide the issue. The Court concludes that, in the circumstances presented here, such an absolute prohibition is constitutionally impermissible.
2. Lack of adequate pre-hearing notice
In prior decisions, this Court has concluded that regular employees of the Tribe, who have passed their introductory period, have a property interest in their continued employment which entitles them to the protections of procedural due process if they are fired. See In the Matter of Contreras, Case No. C-00-07-016 (order at 6); In the Matter of Baker, Case No. C-00-03-003 (clarifying order 1-2, order at 4-7). See also Employee Handbook at 60 (“Regular employees who have completed their Introductory Period may be involuntarily terminated for any reason determined by the Tribe to be consistent with the due process provision of the Tribal Constitution”). Here, the Tribe does not contend that these Petitioners were not entitled to procedural due process. Instead, the Tribe argues that they each received adequate due process. As this Court has held,
Although due process is a flexible concept, “[a]n essential principle of due process is that a deprivation of life, liberty, or property ‘be preceded by notice and an opportunity for hearing appropriate to the nature of the case.’ ” [Cleveland Bd. Of Educ. v]. Loudermill, 470 U.S. [532,] at 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 [(1985)], quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Further:
Adequate notice is integral to the due process right to a fan* hearing, for the “right to be heard has little reality or worth unless one is informed.” Mullane, 339 U.S. at 314, 70 S.Ct. 652, 94 L.Ed. 865. Adequate notice is that which is “reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present then- objections”.
Bliek [v. Palmer], 102 F.3d 1472, at 1475 [(8th Cir.1997)]. In considering the adequacy of the notice, one factor that a Court may consider is the legal sophistication and experience of those who receive the notice, as well as whether the recipient is apt to be represented by legal counsel. Id. at 1476.
Baker, order at 7.
In these cases, the pre-hearing notices the Petitioners received would have easily satisfied these due process standards, if the hearings had been limited to the issue identified in the termination notices, which simply stated that each Petitioner had been fired because of the lack of the required professional license. The cases did not stay that simple, however. Instead, the issues shifted and multiplied. The Tribe argues that Petitioners themselves are responsible for raising many additional issues because they alluded to them in their grievance form. Petitioners do not disagree, or argue that they can blame the Tribe for not giving them advance notice that those issues would be raised at the hearing, but Petitioners contend that the evolution of the issues did not stop there and continued throughout each hearing, *281 leaving Petitioners unprepared and surprised.
In each case, the Court agrees with Petitioners. The Court has carefully reviewed the record of each of these proceedings, including the transcripts of the three IRB hearings, and the Court finds that, in each instance, the Petitioner was unfairly blind sided by one or more issues that arose at the hearing and of which the Petitioner had no advance notice. The hearings were relatively lengthy, unstructured, and undisciplined. In each hearing, the case against the Petitioner was presented almost in a stream-of-conseiousness fashion, with one accusation and criticism followed more-or-less randomly by another. By the conclusion of each hearing, any sense of orderly presentation of the issues was lost amid the myriad of additional claims that had been raised. The Petitioners were not given adequate notice of the plethora of claims that they would have to face at these hearings, and even the IRB panel members sometimes appear to have been confused about which issues were before them.
Diana Ramey’s hearing provides the most vivid example of the rather helter skelter presentation at these hearings and of the confusion and unfair surprise that was the result. Relatively early in her lengthy hearing — which had to be continued to a second day — she complained that she “truly was unprepared for” some of the issues raised. She repeated that complaint later. As the hearing continued and additional issues arose, even an IRB member questioned why an issue was being discussed.[3] Even accepting that the Petitioners’ grievance form had raised issues beyond the bare fact that the Petitioners did not have the required professional licenses, nothing fairly prepared Ms. Ramey for the broad attack on the quality of client care in general and of her work in particular that greeted Petitioner at her IRB hearing. Those issues ranged far afield from the licensing issue and anything raised in the grievance, to complaints about the courses she had taken in graduate school, budgeting and insurance billing concerns, quality improvement issues, the lack of a peer review plan, and claims of patient dissatisfaction and lack of community confidence. Apparently, anything that came to mind was considered fair game, but that unconstrained approach was not fair to her. Petitioner was entitled to adequate pre-hearing notice of the issues that would be raised, and she did not receive such notice here.
The other two hearings were similar. In Richard Synowski’s case, his graduate school course work and his degree also became an issue. In addition, unexpected attacks were made on the quality of patient care generally, on the management (and alleged mismanagement) of patient files, and on the quality of his care. Polly Lewis’s hearing also strayed into budgetary issues, general attacks on the quality of counseling care, and an earlier performance review of her work. The pre-hearing notice did not fairly apprize either Synow-ski or Lewis that these issues would be raised. They, therefore, had no chance to prepare to meet these issues at their hearings.
The additional issues raised at these hearings are not necessarily irrelevant. They might well bear on the employer’s decision to terminate these employees. But the employer cannot have it both ways. *282 The employer began by insisting that these employees were fired simply because they did not have the required professional licenses. It is hard to imagine a more discrete and straightforward issue. But, by the time of the hearing, the employer no longer was content to rely on and limit its presentation to that one issue, or even to a refutation of or a response to the points made by Petitioners in their grievance form. Instead, the employer seized on any complaint available or imaginable, whether related to the licensing policy, the problems of running the center, the quality of patient care, the keeping of files, attendance at meetings, graduate school transcripts, the choice of graduate school course work, etc. The danger of such an unconstrained and wide-ranging presentation at an IRB hearing is that the issues raised are likely to stray beyond those of which the petitioner has had any adequate, advance notice. That danger was realized in each of these cases and, therefore, the Court must reverse and remand.
That result means that the Court need not discuss any of the other issues raised, with the exception of the issue discussed below, which appears to be apt to arise again on remand.
3. Prohibition of representation by counsel
The employee handbook regarding IRB hearings provides that “[attorneys may not participate in the hearing on behalf of any party or witness.” Before this Court, the Tribe admits that this is the applicable policy. At her IRB hearing, Ms. Ramey asked about the policy and was told that attorneys could not participate in an IRB hearing. She now argues that such a policy deprives a petitioner of due process. The Tribe contends that this rather extraordinary provision — in which an employee cannot be represented by counsel at the only hearing at which an evidentiary record is made regarding the employee’s firing — comports with due process. As explained below, the Court cannot agree.
The resolution of this issue depends upon an application of the familiar three-factor test laid out in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and agency burdens that additional or substitute procedural requirements would entail.
See also Baker, order at 9 (quoting and applying that test). Here, applying the Mathews test demonstrates that prohibiting an employee from being represented by counsel at an IRB hearing amounts to a due process violation. The employee’s interest is significant; the risk of an erroneous deprivation is enhanced by barring counsel; and the Tribe’s interest in prohibiting the participation of attorneys is not sufficient to outweigh the two other factors. Indeed, as these three cases suggest, the participation of an attorney, even one representing the petitioner, might also benefit the Tribe.
With respect to the first factor — the private interest involved — “the interest of an employee * * * in retaining his employment, has long been recognized as substantial.” Garraghty v. Com. of Va., Dept. of Corrections, 52 F.3d 1274, 1282 (4th Cir.1995).
The Supreme Court explained in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 543, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), “[T]he significance *283 of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood.” Even if a fired worker finds “employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job.” Id.
Because of the significance of the private interest involved, generally a pre-termination hearing is required when an employee with a cognizable due process interest is fired. Loudermill; Garraghty, 52 F.3d at 1283.[4] In this setting, more limited pre-termination process is permissible
only when a plaintiff was later afforded a full post-termination hearing. See, e.g., Loudermill, 470 U.S. at 546, 105 S.Ct. 1487, 84 L.Ed.2d 494(“Our holding rests in part on the provisions in Ohio law for a full post-termination hearing.”); Holland v. Rimmer, 25 F.3d 1251, 1258 (4th Cir.1994) (pre-termination process adequate when followed by Virginia Personnel Act grievance procedure that includes right to cross-examination); Linton v. Frederick County Bd. of County Com’rs., 964 F.2d 1436, 1441 (4th Cir.1992) (pre-termination process adequate, when “full post-termination process was available and relied on to challenge the merits of the county’s decision”); McClelland v. Massinga, 786 F.2d 1205, 1213 (4th Cir.1986) (pre-de-privation process upheld because aggrieved party “is entitled to a full administrative hearing with panoply of rights attaching to such a heating, and should he be dissatisfied with the administrative decision is entitled to a judicial review”).
Id. In sum,
due process requires that a discharged employee’s post-termination hearing be substantially more “meaningful” [than the relatively abbreviated pre-termi-nation process]. At a minimum, this requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him. The severity of depriving a person of the means of livelihood requires that such person have at least one opportunity for such a full hearing, so that he may challenge the basis for the state’s action and may provide reasons why that action should not be taken.
Carter v. Western Reserve Psychiatric Habilitation, 767 F.2d 270, 272 (6th Cir.1985) (emphasis added; citation omitted).
Such a Ml post-termination hearing, complete with the opportunity for representation by counsel, lessens the chance of an eiToneous deprivation of an employee’s rights. As discussed above, in these cases the Court is forced to reverse and remand the IRB’s decisions because the issues raised at the hearings ranged far afield and strayed beyond any issues about which the Petitioners had received any advance notice. Had the Petitioners been represented by counsel, it is likely, if not certain, that counsel would have objected when extraneous issues were raised. Ironically, that result would have aided the Tribe (and perhaps would have avoided these remands), as well as have helped the Petitioners. The Tribe argues that little *284 fact finding is involved in these hearings. Counsel’s utility, of course, is not necessarily limited to factual issues. In any event, these records do not bear out that claim. Several factual issues — including a credibility issue regarding what happened at a meeting attended by all the Petitioners— arose at these hearings. The importance of representation by counsel is widely recognized in the law. There is nothing unique about these hearings that would render the assistance of counsel meaningless. Thus, both the second, as well as the first, Mathews factor weighs heavily in petitioners’ favor.
The Tribe may have some interest in barring attorneys from these hearings, but that interest appears insignificant in contrast to Petitioners’. The Tribe may not want to spend its own money to pay for its own legal representation at IRB hearings. That choice is the Tribe’s to make. But the Tribe cannot prevent Petitioners from spending their money on attorneys simply because the Tribe does not want to spend its funds. If Petitioners retain attorneys, that choice will still be open to the Tribe. The Tribe need not choose legal representation, but it cannot permissibly prevent Petitioners from making that choice. The Tribe also may contend that these are relatively informal or streamlined proceedings. As discussed above, due process considerations may mean that these hearings cannot be as informal or streamlined as the Tribe might wish. In any event, the proceedings in these cases belie any claim of informality or of simple procedure. These hearings were relatively lengthy, sometimes contentious, always adversarial, and far from simple. That may have been the Tribe’s initial goal, but it is not what has happened.
In sum, the very significant private interest involved in being fired from one’s job, and the significant risk of an erroneous result when an employee is prohibited from being represented by counsel, both point clearly toward a due process violation. Whatever interest the Tribe may have in barring its employees from legal representation is more than outweighed by those two factors.
The cases cited by the Tribe are not to the contrary. In Walters v. Nat. Assn. of Radiation Survivors, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985), the Court dealt with the exclusion of lawyers from hearings regarding service-related death and disability claims, holding that such an exclusion was constitutionally permissible. But the government’s fiscal interest weighed much more heavily. The record demonstrated that 400,000 such hearings were held per year. Id. at 309, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220. This record does not reveal how many IRB hearings are held per year but, judging from the Court’s experience, the number must be lower by several orders of magnitude. In addition, in the hearings dealt with in Walters, no government representative of any kind appeared at any level of the review process, while the claimants had free assistance from trained lay representatives. No such assistance is available here.
The Tribe also relies on Wallace v. Tilley, 41 F.3d 296 (7th Cir.1994), on Osteen v. Henley, 13 F.3d 221 (7th Cir.1993), and on Yashon v. Hunt, 825 F.2d 1016 (6th Cir.1987), None of those cases assists the Tribe’s position here. Somewhat ironically — given the context in which the issue arises here — Wallace deals with the abbreviated pre-termination procedures that are permissible when an employee is afforded the full complement of post-termination process (the abbreviated procedures also were permissible in that case under the terms of the pertinent collective bargaining agreement). 41 F.3d at 301. Yashon *285 concerns the adequacy of “proceedings held to evaluate a physician’s application for membership on a hospital’s attending medical staff.” 825 F.2d at 1026. As a matter of due process, if applying for a position creates any property or other cognizable interest at all, the interest is of considerably less moment than the significant interest in continued employment. That fact is apparent from the decision in Yashon itself, which contrasts the situation there to the one involved in Carter, which is cited and discussed above. In Yashon, the Court described the holding in Carter, as follows: “in post-termination Loudermitt type hearings, discharged civil servants have the right ‘to have the assistance of counsel,’ ” 825 F.2d at 1026 (emphasis added). Osteen also involves a matter of considerably less private importance than losing one’s job, viz., disciplinary proceedings brought against a college student. In the Seventh Circuit, where Osteen was decided, the Court had not even determined whether a college student had any property interest in his continued attendance. In sum, each of the cases relied on by the Tribe is readily distinguishable. In Walters, given the enormous number of cases involved, the economies of scale became a significant factor. In addition, the government had no representation at the hearings, while the claimant had free, experienced lay representation. In the other cases cited by the Tribe, the private interests involved were relatively insignificant, even assuming they amounted to a protected property interest at all. In contrast, here the private interest is a very significant one — the interest in being able to earn a living and to continued employment, and the reputational interest in being able to obtain another job. The increased risk of an erroneous deprivation of that significant interest, because of the lack of legal representation, also weighs heavily in Petitioners’ favor. There is little to weigh against those two weighty factors. Despite claims of informality and expedience, these hearings have already become lengthy, complicated, and disputatious without the presence of any attorneys. At this point, there is at least the hope that the possibility of attorney representation for Petitioners may simplify what has become an unduly complex process and focus on what has become diffuse. In this situation, the Court has little difficulty in concluding that prohibiting Petitioners from being represented by counsel at IRB hearing is a due process violation.[5]
CONCLUSION:
For the reasons given above, the Court concludes that the notice Petitioners received in each of these cases was Constitutionally insufficient, that Petitioners were deprived of due process, and that, therefore, each of these three cases must be reversed and remanded for further proceedings not inconsistent with this opinion.
IT IS HEREBY ORDERED:
The cases of Richard Synowski, Polly Lewis, and Diana Ramey are remanded to the Internal Review Board for further proceedings not inconsistent with this opinion.

. Because Petitioners did not raise their partial-decision-maker claims until they filed their reply briefs, the Tribe did not specifically respond to those claims in its briefing. As explained below, the Court does not find it necessary to discuss or rely on those claims in deciding these cases, so the Court need not decide whether those claims are properly before it. The claims regarding IRB fact finding relate to one of Petitioners' due process contentions, which is addressed below.

. Those hearings are described below.

. “IRB: And does this have anything to do with the grievance at hand right now? This question about quality patient care, does that have to do with the immediate termination or grievance?” Later, an IRB member asked: "And what's the point of going through her college transcripts? What’s the point in that?”

. No one has raised any issue regarding pre-termination hearings in these three cases and the Court does not decide any such issue. But it is impossible in this context to discuss the procedures that must be provided after termination without taking into account the pre-lermination procedures that may be provided.

. Nothing in this opinion should be taken as suggesting that IRB petitioners must be provided with attorneys at Tribal expense. They simply cannot be prohibited from retaining an attorney to represent them.